197   523
107a ³176

ROBERT H. LAW *et al.*

*v.*

THE SANITARY DISTRICT OF CHICAGO.

*Opinion filed June 19, 1902.*

1. VERDICT—*verdict may be amended by the court.* A verdict may be amended by the court or construed with reference to the pleadings and evidence in the record.

2. SAME—*when condemnation verdict is properly construed.* If a condemnation petition describes the land condemned, by one description as an entirety, and then, by separate descriptions, as portions of lots 1 and 2, a verdict for the portion of "lot 1" described, without mentioning "lot 2," is properly construed as covering the entire tract, where the number of square feet specified in the verdict corresponds with the number in both portions of lots 1 and 2 and the boundary line given in the verdict includes both portions.

3. BILLS OF EXCEPTION—*rule where record contains no bill of exceptions.* If the record contains no bill of exceptions showing the evidence heard on the trial, it will be presumed that the evidence was ample to sustain the judgment.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

R. S. THOMPSON, and C. L. JENKS, Jr., for plaintiffs in error.

JAMES TODD, and P. C. HALEY, for defendant in error.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

This is a petition, filed by the defendant in error, the Sanitary District of Chicago, on May 7, 1900, against the plaintiffs in error, Robert H. Law, the Delaware, Lacka-

wanna and Western Railroad Company, and Elizabeth
A. Ware, and other parties not here as plaintiffs in error,
for the purpose of condemning certain property, belong-
ing to the plaintiffs in error, in pursuance of an ordi-
nance passed by the petitioner, the Sanitary District of
Chicago, on April 25, 1900, laying out and establishing a
plan for the deepening, widening and improving of the
Chicago river from a point on the west bank of the south
branch of the Chicago river (being the south line of Eigh-
teenth street) to the east right of way line of the Pitts-
burgh, Ft. Wayne and Chicago Railroad Company's right
of way, so as to make said river between the points afore-
said of a uniform width of two hundred feet and a depth
of thirty feet below Chicago city datum. The trial re-
sulted in a verdict and judgment, awarding to the three
plaintiffs in error the sum of $20,875.23, as compensation
for their property taken. The verdict of the jury was
rendered on January 12, 1901. Prior to March 4, 1901,
plaintiffs in error filed a motion for a new trial. This
motion for new trial was overruled on March 4, 1901, and
upon the same day the judgment in condemnation was
entered.

On April 9, 1901, plaintiffs in error made a motion to
vacate the judgment of condemnation, and to correct the
same by striking out a part of the description of the real
estate described in said judgment. An affidavit was filed
in support of this motion by plaintiffs in error, and two
affidavits were filed by defendant in error in opposition
to the motion, and defendant in error also introduced,
upon the hearing of the motion, two maps, showing the
location and dimensions of the property to be taken, and
the boundaries of the subdivision, in which said property
is located. The court denied the motion to correct the
judgment, and to the order, denying the same, plaintiffs
in error excepted, and prayed an appeal to this court.

There is no bill of exceptions in the record, except a
bill of exceptions, showing the proceedings upon the mo-

tion to vacate and correct the judgment. This bill of exceptions contains nothing except the verdict of the jury rendered on January 12, 1901, the judgment of condemnation entered on March 4, 1901, the motion by plaintiffs in error to vacate the judgment, the grounds, upon which said motion is based, the order for possession, entered on March 13, 1901, and the affidavits and plats or maps above mentioned.

In describing the property, belonging to the plaintiffs in error, which defendant in error, the petitioner below, sought to condemn, the petition first describes the property as a whole, and then separately describes two parts of it. The whole of the property, sought to be condemned, is a certain part of lot 1 and certain parts of lot 2 in block 14 in canal trustees' subdivision, etc., lying southeasterly of a certain line. The two separate descriptions, contained in the petition, are, the one of the part of lot 1 in block 14 lying south-easterly of said line, and the other of the part of lot 2 in said block 14, lying south-easterly of said line.

One of the maps, introduced in evidence upon the motion to vacate the judgment, shows that the part of lot 1, lying south-easterly of the line in question, contains 5907.5 square feet, and that the part of lot 2, lying south-easterly of said line contains 11,133.50 square feet. The total of these two sums is 17,041 square feet. The line above referred to, lying north-westerly of all the property in question, is 294.37 feet long. The portion of the line, which lies north-westerly of the part of lot 1 in block 14 in question, is 143.28 feet long. The portion of the line, which lies north-westerly of the part of lot 2 in block 14 in question, is 151.09 feet in length.

The verdict of the jury describes the part of lot 1 in block 14, lying south-easterly of the line in question, but omits to describe the part of lot 2 in block 14, which lies south-easterly of the line in question. The judgment of condemnation, entered by the court, describes both the

part of lot 1 and the part of lot 2 in block 14 lying south-easterly of the line in question. The objection, made to the judgment by plaintiffs in error in the court below, is that it describes more land than was mentioned by the jury in their verdict, the verdict technically describing only the part of lot 1 in block 14 lying south-easterly of the line in question, whereas the judgment describes both the part of lot 1 in block 14 lying south-easterly of said line, and also the part of lot 2 in block 14 lying south-easterly of said line. The motion, made by plaintiffs in error, was a motion to correct the judgment by striking out so much of it, as described the part of lot 2 lying south-easterly of the line in question. If this were done, it would make the judgment of condemnation a judgment, which condemns only a part of the property of the plaintiffs in error described in the petition, to-wit, that part of lot 1 in block 14 which lies south-easterly of the line in question; and the compensation of $20,875.23 would be awarded for the taking of the part of lot 1 above mentioned, and no compensation would be awarded for the taking of the part of lot 2 above referred to.

The judgment, entered by the court, as above set forth, may be regarded as an amendment of the verdict, or as a construction of the verdict. (*Harvey* v. *Head*, 68 Ga. 250). A verdict may be amended by the court or construed by reference to the pleadings and the evidence in the record, and in some instances from the notes of the judge, when the intention of the jury is apparent from the pleadings and the evidence. Courts adhere strictly to the rule that "when the intention of the jury is manifest, the court will set right matter of form." (*Harvey* v. *Head, supra; Hawkes* v. *Crofton*, 2 Burrows, 698; *Petrie* v. *Harney*, 3 Tenn. 659; *Clark* v. *Lamb*, 8 Pick. 415). "In considering the verdict itself, with a view to its sufficiency, the first object is to ascertain what the jury intended to find; and this is to be done by construing the verdict liberally, with the sole view of ascertaining the meaning

of the jury, and not under the technical rules of construction, which are applicable to pleadings. If the meaning of the jury can be ascertained, 'and a verdict on the point in issue can be made out, the court will mould it into form and make it serve.' * * * According to the nature of the thing, this rule must be considered as applicable to special, as well as to general verdicts." (*Miller* v. *Shackleford*, 4 Dana, (Ky.) 271; *Mays* v. *Lewis*, 4 Tex. 38).

In the case at bar, the verdict of the jury reads as follows: "We, the jury, find and report that the just compensation to be paid to the owners and each owner of the property described in the petition filed herein, as follows: that part of lot 1, in block 14, in canal trustees' subdivision, etc., * * * lying south-easterly of a line drawn from a point in the north line of said lot 1, 238 feet east of the north-west corner of said lot 1 to a point on the dividing line between lots 2 and 3, in said block 14, 190.5 feet south-easterly of the north-west corner of said lot 3, measured along said dividing line, excepting from the above described land that part recently purchased by the United States government for the purpose of widening the south branch of the Chicago river; situated in the city of Chicago, county of Cook and State of Illinois, containing 17,041 square feet, to be taken by the petitioners herein, to be the sum of $20,875.23."

Here, the westerly, or north-westerly, line of the tract described in the verdict is the westerly, or north-westerly, boundary line, not only of the part of lot 1, but also of the part of lot 2, in block 14 to be taken for the purpose of the improvement. This westerly or north-westerly line, as described in the verdict, is 294.37 feet long. If it had been the intention of the jury, that only the part of lot 1 lying south-easterly of this line should be condemned, the line on the westerly or north-westerly side of the tract to be condemned would have been described as a line only 143.28 feet long; that is to say, that part of the north-westerly line, which lies north-

westerly of the part of lot 1, sought to be taken, would have been described, and not a line north-westerly of both the part of lot 1 and the part of lot 2, sought to be taken. In other words, the use of the whole of the north-westerly boundary line of both pieces of property, belonging to the plaintiffs in error, is mentioned by the jury in the description of the property referred to in their verdict. This tends to show that the compensation to be awarded was to be for the whole of the property, and not for a part of it.

But there is another fact even more significant, as indicating the intention of the jury, than the length of the boundary line on the west or north-westerly side of the property. The jury described in their verdict a tract of land "containing 17,041 square feet." Seventeen thousand and forty-one square feet constitute the contents and extent of both tracts belonging to plaintiffs in error, both the part of lot 1 in block 14, and the part of lot 2 in block 14, lying south-easterly of the line in question. Seventeen thousand and forty-one square feet is the exact total of 5907.5 square feet lying in the part of lot 1, sought to be taken, and 11,133.50 square feet lying in the part of lot 2, sought to be taken. The jury thus, by the use of this language in their verdict, evidently had in their minds a tract of land, containing the number of square feet in both of the tracts belonging to the plaintiffs in error, and not the number of square feet in one tract only.

In addition to what has already been said, one of the affidavits, filed upon the motion of plaintiffs in error to vacate and correct the judgment, states that, after the court had read its instructions to the jury, the attorneys for the respective parties, the plaintiffs in error and the Sanitary District of Chicago, dictated a form of verdict to a stenographer, who was by them instructed to write out his notes on the typewriter, and bring them back to the court as soon as possible; that the petition in the

case was handed to the stenographer as a reference for greater certainty; that all the parties then left the court room, except the affiant, who remained until the stenographer returned with the form of the verdict, which was thereupon immediately handed to the judge, and sent by him to the jury. According to the English practice, "the minutes of a special verdict, intended to be found, ought to be signed by one of the counsel for each party, and should be approved by the judge; it being his province to take care that the question of law be fairly stated; and they ought to be delivered to the jury before they find a verdict. If all the counsel of one party refuse to sign the minutes, the judge may direct the jury to find a verdict from the minutes, as signed by the counsel of the other party. * * * And if the verdict be defective, so that the court cannot give judgment thereon, they will amend it, if possible, by the notes of the counsel, or the memory of the judge who tried the cause." (*Miller* v. *Shackleford, supra*). In the latter case of *Miller* v. *Shackleford, supra*, it was said by the court: "Making all due allowance for the difference in the practice and organization of the courts in this country and in England, we think these references fully justify the course pursued in the preparation of this verdict. A jury is not expected to be able (especially in a complicated case) to draw up a special verdict without assistance. The facts are to be found upon their own convictions and responsibility; the form of the finding, and its sufficiency as to the extent of the facts embraced, must be looked to by the court."

It thus appears that, in this case, a form of verdict was drawn up by the counsel of both parties, and agreed upon by them. Evidently, the form thus drawn up contained the words, which appeared in the verdict of the jury as rendered by them, to-wit, "containing 17,041 square feet." The conclusion is irresistible, that the attorneys of the plaintiffs in error consented to a form of verdict to be submitted to the jury, which required them

197—34

to find the value of, or the amount of compensation to be paid for, a tract of land, containing 17,041 square feet, and not a tract of land, containing only 5907.5 square feet. It is evident, that the stenographer, in copying the description from the petition which, according to the affidavit, was handed to him, copied the description of one of the tracts of land, instead of copying the full description of both tracts, but the mention of the full contents, or whole number of square feet, of both tracts, shows clearly to our minds the intention of the jury to award a sum for the condemnation of both tracts.

In this case, there is no bill of exceptions, which sets forth the evidence taken upon the trial of the cause, or the instructions of the court, or the grounds, upon which a new trial was asked. It is well settled by the decisions of this court that, where the record contains no bill of exceptions showing the evidence heard on the trial of a cause, it will be presumed that the evidence was ample to sustain the judgment of the court below. It always devolves upon a party, alleging error, to make it appear. (*Miller* v. *Glass*, 118 Ill. 443). Every presumption is in favor of the correctness of the judgment entered by the trial court, unless the contrary is made to appear. (*Lee* v. *Town of Mound Station*, 118 Ill. 304). In the case at bar, the court entered the judgment of condemnation with all the evidence introduced upon the trial fresh in its mind. The presumption is, that the construction, given by the court to the verdict of the jury in the judgment rendered by it, was sustained by the evidence. If the evidence showed that both of the tracts, belonging to the plaintiffs in error, contained 17,041 square feet, and were of the value of $20,875.23, the court had a right to conclude from the evidence that, when the jury in their verdict referred to a tract containing 17,041 square feet, they intended to award compensation for both of the tracts, or all of the property belonging to the plaintiffs in error, as described in the petition. In the absence of

a bill of exceptions showing what the testimony was, we are unable to say that the trial court erred in its construction of the verdict of the jury.

We agree with counsel for plaintiffs in error that the words, "so much of the south-east quarter as lies west of the south branch of the Chicago river," was a part of the description of the subdivision, in which block 14 lay. But we are of the opinion that, when the jury in their verdict used the words, "the just compensation to be paid to the owners and each owner of the property described in the petition filed herein," they did not intend to award to each one of the plaintiffs in error the sum of $20,875.23 as compensation for the part of the property belonging to such plaintiff in error alone, but that it was their intention to award the sum to all of the plaintiffs in error for the whole of the property; and it was the duty of the court afterwards to require the sum to be paid out to the plaintiffs in error in proportion to their respective interests. In the form of the verdict framed by counsel, and submitted by the court to the jury for their use, a part of the language of the oath to be taken by the jury, as prescribed by section 8 of the Eminent Domain act, was embodied in the verdict. That language is as follows: "You and each of you do solemnly swear that you will well and truly ascertain and report just compensation to the owner (and each owner) of the property, which it is sought to take or damage in this case," etc. (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1770). The use, however, of the words, "and each owner," as they thus appear in the oath prescribed and in the verdict rendered, does not necessarily indicate that the whole sum mentioned in the verdict in the case at bar was intended by the jury to be paid to each plaintiff in error.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*