HOWARD A. CROWELL *et al.*, Plaintiffs-Appellees, v. WILEY B. PARRISH *et al.*, Defendants-Appellants.

Fifth District   No. 5—86—0177

Opinion filed August 13, 1987.

Thomas H. Boswell, of Mitchell, Brandon & Schmidt, of Carbondale, for appellants.

Paul Christenson, of Bailey & Christenson, of Murphysboro, for appellees.

JUSTICE LEWIS* delivered the opinion of the court:

The plaintiffs, Howard and Ruby Crowell, brought this action seeking a declaration that certain specifically described property was

---

*Justice Lewis replaces Justice Jones, who retired after the cause was taken under advisement.

owned by them by virtue of the doctrine of adverse possession. Following a jury trial, a verdict was returned for the plaintiffs on their adverse possession claim, and the trial court entered judgment on the verdict, setting forth the specific legal description of the property in question. On appeal the defendants, Wiley and Shirley Parrish, contend that the court erred in including the legal description of the property in its written judgment where no evidence pertaining to this description was introduced at trial. The defendants additionally contend that the court erred in denying their motion for judgment notwithstanding the verdict in that the plaintiffs failed to prove the location of the fence line that allegedly formed the boundary between the parties' respective properties. We reverse and remand with directions.

In 1980 the defendants purchased a tract of rural land in Jackson County, Illinois, which adjoined property owned by the plaintiffs on the north. An old fence running through the woods on the southern border of the plaintiffs' property had formed the boundary between the two tracts for several years. From 1919 through 1979 the plaintiffs and their predecessors-in-title had used the property up to the fence line to pasture cattle, hogs and horses.

In 1981 the defendants hired a surveyor to determine the quarter quarter section line between the parties' property. From the summer of 1981 to the fall of 1982, the defendants removed the underbrush along the disputed border and constructed a new fence north of the old fence line along or near the quarter quarter section line located by the defendants' survey. The plaintiffs subsequently filed suit claiming that they had acquired the strip of property south of the quarter quarter section line and north of the old fence line by virtue of adverse possession for the statutory period. Counts I and III of the plaintiffs' third amended complaint contained the adverse possession claims and included a detailed legal description of the property in issue.

At trial various witnesses testified regarding the location of the old fence, which had consisted of wire strung from tree to tree with some posts in between for a distance of approximately 1,000 feet. The plaintiffs' witnesses, who were familiar with the fence from having lived in the area, testified that there had always been just one fence between the two adjoining properties and that the old fence had run in a zig-zag line through the woods along the plaintiffs' southern boundary. As the fence had needed repair from time to time, it had been nailed to a nearby tree or new posts had been set within the existing fence line and wire added.

When the plaintiffs had stopped pasturing animals on their property in 1979, the fence had been in disrepair, with parts of it down. In

1981, when defendant Wiley Parrish had cleared out the underbrush in order to erect a new fence, he had found wire from the old fence that was broken and covered with underbrush. The defendant testified that "very little" of the old fence was standing and that the underbrush was so grown up in places that it was impossible to tell where the old fence had run. The defendant had seen nails in the trees and wire "hanging down on the ground" between the trees where the fence had been nailed. The defendant had also found trees with wire embedded in them that did not have any part of the fence attached to them.

Jack Bass, a registered land surveyor, testified that in August 1985 he had, at the plaintiffs' request, gone to the subject property in the company of the plaintiffs' attorney and three of the plaintiffs' neighbors to search for evidence of the old fence line in the remaining trees. After locating as many trees and stumps as possible of the old fence line, Bass had determined the distance from the individual trees over to the new fence in order to prepare a drawing showing the location of the old fence line in relation to the new fence. These distances, varying from 2 feet to 31.8 feet, were indicated on a scale drawing introduced into evidence as plaintiffs' exhibit No. 19. The drawing showed in graphic form the area claimed by the plaintiffs and included 13 points marking the old fence line. The drawing also contained a red line showing the location of the old fence line and indicated the specific trees used to locate the fence as well as the distances between those trees. Bass testified that it was his opinion that there had been

"a fence or fences that substantially followed the red line with, of course, deviations that may have occurred because of trees that are not there or possible posts that were there and have been removed."

The trial court admitted plaintiffs' exhibit No. 19 into evidence

"for the limited purpose of being a graphic drawing of what this witness [Bass] observed in the way of trees and where an apparent fence line in his opinion is."

Following testimony by other witnesses, the court stated that plaintiffs' exhibit No. 19 would be admitted to assist the jury in coordinating the testimony of all the witnesses, including their testimony regarding the different types and sizes of trees in the fence line. The court reiterated that the exhibit was admitted for demonstrative purposes and "not as proof per se" of where either the old or new fence was located.

In further testimony the plaintiffs' witnesses corroborated Bass'

testimony regarding the points of the old fence with their recollection of trees to which the old fence had been attached. These trees were identified by means of photographs of the property that were introduced at trial.

The plaintiffs introduced no evidence of the specific legal description contained in their third amended complaint. This description described the property in terms of the distances between the 13 points located by the plaintiffs' witnesses and the angles formed by the lines from point to point. While the lines and angles of the old fence were depicted in the drawing prepared by Jack Bass and admitted as plaintiffs' exhibit No. 19, the exhibit contained no reference to the degree of the angles involved.

At the close of the testimony the jury returned a verdict for the plaintiffs on counts I and III of their complaint. This verdict was rendered pursuant to issues instructions given to the jury that referred to counts I and III and to "an east/west fence" ·that formed the boundary of the property claimed by the plaintiffs. The court entered a written judgment in which it adjudged the plaintiffs the owners of certain real estate in Jackson County "more particularly described in the complaint herein" and set forth the detailed legal description contained in the plaintiffs' complaint. The defendants subsequently filed a post-trial motion for judgment notwithstanding the verdict or, in the alternative, for the court to vacate that portion of its judgment containing the legal description of the property. The court, upon objection by the plaintiffs, denied the motion.

The defendants contend on appeal that the trial court erred in denying their post-trial motion because there was no evidence of a legal description presented at trial and because the plaintiffs failed to prove by clear and convincing evidence the location of the boundaries of the tract claimed by them. The defendants assert that since the plaintiffs submitted no evidence of the legal description to the jury and since the legal description was not included in the jury instructions upon which the verdict was rendered, the court should not have included the legal description in its judgment entered on the verdict.

■■■■ In a jury trial, the verdict, if supported by the evidence, is the basis on which the judgment of the court is rendered. Thus, after a jury trial and verdict, the judgment must follow the verdict, unless a sufficient reason for giving a judgment notwithstanding the verdict appears. (23 Ill. L. & Prac. *Judgments* sec. 22, at 225 (1979); see Ill. Rev. Stat. 1985, ch. 110, par. 2—1201(b).) While the court has the power to amend a verdict to conform to the intent of the jury, it may do so only when the defect is one of form, rather than substance.

(*Anderson v. Smith* (1980), 91 Ill. App. 3d 938, 415 N.E.2d 643.) A trial court should not amend a verdict in order to reach a determination that the court believes the jury ought to have made, and an amendment must reflect only what the jury clearly intended the verdict to be. 91 Ill. App. 3d 938, 415 N.E.2d 643; *Roadruck v. Schultz* (1948), 333 Ill. App. 476, 77 N.E.2d 874.

In the instant case the trial court, in entering judgment on the verdict for the plaintiffs on the adverse possession counts of their complaint, included the detailed legal description that was set forth in the plaintiffs' complaint. This description, however, was never introduced into evidence at trial or included in the issues instruction upon which the verdict was rendered. The jury returned a verdict which found in general terms for the plaintiffs on counts I and III of the plaintiffs' complaint. It cannot be said, therefore, that the legal description was part of the jury's verdict regarding the location of the disputed property or that the court, in including the description, merely amended the verdict as to form to reflect the intent of the jury. *Cf. Law v. Sanitary District* (1902), 197 Ill. 523, 64 N.E. 536 (trial court in condemnation case properly corrected verdict by inserting full legal description where special verdict form returned by jury inadvertently omitted a portion of description).

■ While the property in question was depicted in great detail in plaintiffs' exhibit No. 19 that was admitted into evidence for consideration by the jury, there was no testimony linking the legal description to the property represented by exhibit No. 19 or otherwise showing that the legal description related to the property. The plaintiffs' assertion on appeal that the description was prepared by surveyor Bass and that it described property bounded by the old fence is of no avail in the absence of testimony to that effect at trial. Since, moreover, plaintiffs' exhibit No. 19 contained no reference to the degree of the angles between the lines of exhibit No. 19 depicting the old fence, the legal description stated in terms of such lines and angles could not, without more, be derived from an examination of exhibit No. 19. We conclude, therefore, that the court erred in including the legal description in its judgment entered on the verdict and hold that that portion of the court's judgment setting forth such description should be stricken as an improper construction of the jury's verdict.

■ Notwithstanding the erroneous inclusion of the legal description in the judgment, the court's judgment entered on the verdict for the plaintiffs may not be overturned if the evidence was sufficient to support the jury's verdict. Language in a judgment that is unnecessary to its validity may be treated as surplusage and does not operate

to vitiate an otherwise proper judgment. (*Nenadic v. Grant Hospital* (1979), 75 Ill. App. 3d 614, 394 N.E.2d 527; 23 Ill. L. & Prac. *Judgments* sec. 23, at 232 (1979).) We must, therefore, consider whether there was a sufficient showing to support the jury's finding that the plaintiffs had proved the elements of adverse possession as to the property in question.

The defendants on appeal make no argument regarding the nature of the plaintiffs' use for the period in question but assert that the plaintiffs failed to prove the location of the boundaries of the property so possessed so as to sustain their burden of proof. The defendants maintain that there was insufficient evidence to establish the location of the old fence to which the plaintiffs claimed and, in a related argument, assert that by alleging the legal description of the property so claimed, the plaintiffs took on the additional burden of proving this location by introducing the legal description at trial, which they concededly did not do.

The court in *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 83, 421 N.E.2d 170, 175, stated:

> "In a case where an adverse possessor is claiming to a mistaken or disputed boundary he bears the burden of establishing by clear and convincing proof the location of the boundary. [Citation.] 'The proof must be such as to establish with reasonable certainty the location of the boundaries of the tract to which the five elements of adverse possession are applied and all of the elements must extend to the tract so claimed. While it is not necessary that the land should be enclosed by a fence, the boundaries must be susceptible of specific and definite location.' [Citation.]"

■ As can be seen, there is no requirement that a plaintiff in an adverse possession case prove the location of the disputed property by exact legal description. Rather, he is required to establish with reasonable certainty the location of the boundaries of the tract in question so that the boundaries are susceptible of specific and definite location. The plaintiffs here, therefore, despite pleading the legal description of the disputed property in their complaint, had only to prove with reasonable certainty the specific and definite location of the boundaries of such property in order to maintain their claim for adverse possession.

■ From a review of the record we find that the evidence was sufficient to establish the location of the old fence that formed the southern boundary of the property claimed by the plaintiffs. While the fence had been removed prior to trial, the plaintiffs' witnesses, who

had lived in the area since childhood and were familiar with the old fence, testified that there had always been just one fence that ran from tree to tree in the woods along the plaintiffs' southern border. These witnesses located 13 points of the old fence, which included trees and stumps with pieces of wire from the old fence remaining in them. The plaintiffs' expert witness, moreover, testified regarding a scale drawing prepared by him that depicted the old fence line and the distances from the points of the old fence to the new fence, which was, in turn, located in relation to the survey line along the quarter quarter section line of the property. This witness stated that, in his opinion, the old fence had substantially followed the line depicted on the scale drawing, which was admitted into evidence for demonstrative purposes.

■■ After hearing this evidence, the jury returned a verdict for the plaintiffs based upon an issues instruction that specified the old fence as the boundary to which the plaintiffs claimed. The jury's finding that the plaintiffs had established their boundary with the requisite proof is entitled to great deference and may be overturned only if clearly against the manifest weight of the evidence. (See *Schwartz v. Piper* (1954), 4 Ill. 2d 488, 122 N.E.2d 535.) The evidence here sufficiently established the location of the boundaries in question so as to sustain the jury's verdict for the plaintiffs on the adverse possession counts. (*Cf. Schwartz v. Piper* (1954), 4 Ill. 2d 488, 122 N.E.2d 535 (location of disputed boundary not established where testimony of plaintiffs' witnesses was uncertain, vague and conflicting and was inconsistent with plat introduced into evidence by plaintiffs).) Since, however, the trial court improperly included the legal description of the property in its written judgment, we reverse the court's judgment and remand this cause with directions to enter judgment on the verdict as rendered, without inclusion of the legal description.

Reversed and remanded with directions.

HARRISON and WELCH, JJ., concur.