8 November 2000

No. 2--99--1252 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

In re
 NANCY M., Alleged to ) Appeal from the Circuit

be a Person Subject to ) Court of Kane County.

Involuntary Medication )

)

) No. 99--MH--95

)

) 

(The People of the State of ) Honorable

 Illinois, Petitioner-Appellee, ) Franklin D. Brewe,

 v. Nancy M., Respondent-Appellant). ) Judge, Presiding.

_________________________________________________________________

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondent, Nancy M., appeals the trial court's order authorizing the involuntary administration of three specific psychotropic medications.  On appeal, respondent contends that the order must be reversed because (1) she was denied her due process right to have the jury adequately instructed in the law; (2) she was denied her right to have the jury determine whether the benefits of the three proposed medications outweighed the risks; and (3) the State failed to present clear and convincing evidence that respondent lacked the capacity to make a reasoned decision about the use of medication.  We reverse.

On March 12, 1999, the State filed a petition to administer psychotropic medication to respondent pursuant to section 2--107.1 of the Mental Health and Developmental Disabilities Code (the Mental Health Code) (405 ILCS 5/2--107.1 (West 1998)).  Respondent requested a jury trial.  On June 14, 1999, respondent filed a motion 
in limine
 seeking to bar the State from introducing certain letters she wrote to Brian C., a former paramour, and from disclosing a prior court ruling reflecting her status as not guilty by reason of insanity of a violation of an order of protection and harassment of a witness.

The trial court conducted a hearing on respondent's motion 
in limine
 on October 18, 1999, just before trial commenced.  The trial court denied respondent's motion, and the cause proceeded to trial.  The State called Carole Ann Rosanova, M.D., respondent's treating psychiatrist at the Elgin Mental Health Center (the Center).  Rosanova had reviewed respondent's past hospital records, consulted with other treating staff, and read "some correspondence *** from the State's Attorney in Cook County."  Rosanova testified that, based on her review of this information, she diagnosed respondent as suffering from bipolar affective disorder, manic type.  According to Rosanova, respondent experienced multiple symptoms of the disorder, such as euphoric affect, distractibility, flight of ideas, hyperactivity, irritability, pressured speech, and delusions.

She based her opinion that respondent had delusions on letters respondent had written to a former paramour, Brian C., in March and April 1998.  Rosanova explained that respondent was first admitted to the Center because she was found not guilty by reason of insanity on a charge of violation of an order of protection that Brian C. had obtained.  In June 1998 respondent was released from the Center on the condition that she attend outpatient treatment and did not have contact with Brian C. or his family.  Respondent contacted Brian C., and in September 1998 the trial court revoked her conditional release.

Rosanova testified that, in the letters, respondent claimed to be a messenger of God and to know that it was God's will that she and Brian C. be together.  In her letters respondent also wrote that she was his true wife and mother of his children.  Rosanova admitted that respondent never made comments similar to these to her and that her information was only from the letters.  Rosanova also admitted that she never spoke to Brian C.

Rosanova next opined that, as a result of her mental illness, respondent was deteriorating in her ability to function.  She explained that, since 1994, respondent had divorced, lost custody of her children, and her license to practice law was suspended.  On cross-examination, Rosanova admitted that the divorce could have been caused by the affair and that she did not know why respondent's law license was suspended.  Rosanova further testified that respondent had not been violent at the Center but opined that she had exhibited threatening or disruptive behavior in the letters to Brian C.

Rosanova testified regarding the medications she was seeking to administer to respondent and noted that respondent had never taken antipsychotic medication.  She first requested Haldol, an older antipsychotic medication, to be taken orally or by injection.  Rosanova testified that Haldol controls delusions but has many neurological side effects.  These side effects include dystonia, a stiffness of large muscles; extrapyramidal side effects such as tremors and muscle stiffness; and tardive dyskinesia, a possibly irreversible involuntary movement disorder.  On cross-examination, Rosanova also discussed a rare and potentially fatal side effect, neuroleptic malignant syndrome.  Rosanova admitted that she does not use older antipsychotics often and that the alternative medications she was requesting were more effective.  She requested Haldol because it can be administered by injection.

Rosanova also requested two newer antipsychotic medications; they have the same possible neurological side effects but at a substantially reduced rate.  Olanzapine would lessen delusions and act as a mood stabilizer but could cause sedation, headaches, and weight gain.  Risperdal also would address delusions and mood and could help motivation and social withdrawal.  Risperdal may also cause sedation, agitation, and slight weight gain.  For all of the medications, Rosanova opined that the benefits would outweigh the side effects.

Rosanova further opined that respondent did not have the capacity to make a reasoned decision about whether to take medication.  Rosanova based her opinion on respondent's denial that she has a mental illness and on respondent's judgment.  Rosanova explained that respondent refused to ingest the medication even though it would not hurt her, other than to sedate her, and it could get her released from the Center within a few weeks.  Rosanova reported that less restricted services were explored for respondent.  Rosanova opined that respondent's illness was not likely to improve without medication.

On cross-examination, Rosanova admitted that respondent has spent a considerable amount of time in the library and has researched medication.  Rosanova also agreed that respondent had the capacity to consent and has consented to other types of medical procedures, such as a mammogram.

Respondent testified on her own behalf and as an adverse witness for the State.  Respondent confirmed that she once had a relationship with Brian C.  Although she no longer had contact with him, she still felt personally involved with him.  Respondent testified that she would like to resume their relationship to feel vindicated.  Respondent did not feel that Brian C. was a victim.  She explained that she never hurt him, that their relationship was complicated, and that, if he did not want her letters, he could have thrown them away.  Respondent further explained that she had referred to God's will in her letter as an attempt to relate to Brian C. because he was a religious person.

Respondent testified that she researched her diagnosis and the medications in the library and spoke to patients on the unit who were mentally ill and had taken those types of medication.  She denied having a mental illness and for that reason said she did not need the medication.  She stated, however, that, if ordered to take medication, she would take Olanzapine or Risperdal because they are less dangerous than Haldol.

Respondent further testified that she kept busy at the Center by socializing, reading, and listening to the radio.  She admitted that she had emotional issues that she was slowly coming to terms with through thought and prayer.  She confirmed she would rather stay at the Center than take the medication and be discharged.

Both sides rested and presented their closing arguments.  The parties and the trial court reviewed the proposed jury instructions.  All the jury instructions tendered by the State were accepted without objection.  Counsel for respondent did not tender any jury instructions.

The trial court instructed the jury, and the jury retired to deliberate.  The jury returned a general verdict granting the State's petition and finding that respondent was "someone who qualifies for the involuntary administration of psychotropic medication."  The trial court entered judgment on the jury's verdict.  Although the jury's verdict form did not specify which of the three proposed antipsychotic medications could now be administered to respondent, the trial court's order did, authorizing Haldol, Olanzapine, and Risperdal.  Respondent timely appeals the trial court's order authorizing the involuntary administration of the three specific psychotropic medications to respondent.

At the outset, we note that this case is moot.  See 
In re Barbara H.
, 183 Ill. 2d 482 (1998); 
In re Timothy H.
, 301 Ill. App. 3d 1008 (1998).  The trial court's order authorizing the administration of psychotropic medication was limited to 90 days, which have since passed.  However, we may review this case if respondent can establish that (1) the duration of the challenged action is too short to be fully litigated prior to its cessation, and (2) a reasonable expectation exists that respondent would be subjected to the same action again.  See 
Barbara H.
, 183 Ill. 2d at 491, citing 
In re A Minor
, 127 Ill. 2d 247, 258 (1989).  In the present case, we find both elements present.  The trial court's order, dated October 18, 1999, was for 90 days and, therefore, too brief to permit appellate review.  Additionally, the record reflects that Rosanova testified that respondent had a mental illness dating back several years that had led to involuntary hospitalization.  Therefore, one could reasonably expect that respondent may again be subject to this type of petition.  Accordingly, we will proceed with the merits of this appeal.

On appeal, respondent contends that the trial court's order must be reversed because (1) the jury was not adequately instructed in the law; (2) the trial court entered an order on a general jury verdict form, thereby preventing the finder of fact from making the determination whether the benefits of each of the three proposed medications outweighed the risks; and (3) the State failed to present clear and convincing evidence that respondent lacked the capacity to make a reasoned decision about the use of medication.  The State initially argues that respondent has waived these issues by failing to tender any jury instructions of her own or present any specific verdict form during the jury instruction conference, failing to object to the evidence at trial, and not raising these issues in a posttrial motion.  See 
People v. Enoch
, 122 Ill. 2d 176 (1988).  Respondent acknowledges her counsel's failure to object to the jury instructions and to the verdict form and requests that we review the alleged errors under the plain error doctrine.

Under the plain error doctrine, we may address a waived issue if the evidence is closely balanced or if the error affects substantial rights.  134 Ill. 2d R. 615(a); 
People v. McVeay
, 302 Ill. App. 3d 960, 966 (1999).  Involuntary mental health services, which include the administration of medication, implicate fundamental liberty interests.  
Barbara H.
, 183 Ill. 2d at 498, citing 
Cooper v. Oklahoma
, 517 U.S. 348, 368-69, 134 L. Ed. 2d 498, 515, 116 S. Ct. 1373, 1384 (1996); see also 
In re David D.
, 307 Ill. App. 3d 30, 32 (1999).  Accordingly, we will consider respondent's issues on appeal.

Respondent first contends that the trial court's order must be reversed because she was denied her due process right to have the jury adequately instructed.  Respondent states that, although the jury was instructed about the element of capacity and some factors to consider in determining capacity, the jury was not instructed on the "presumption of capacity."  Respondent also argues that the trial court should have given the jury a limiting instruction concerning Rosanova's testimony.  The State counters that, because the jury received an instruction setting forth the State's burden to prove that respondent lacked the capacity to make a reasoned decision about the proposed medication, no separate instruction should be required stating that respondent at the outset is presumed to have capacity.  The State also asserts that any failure to provide a limiting instruction did not constitute an abuse of discretion.

Jury instructions provide jurors with the correct principles of law applicable to the evidence submitted at trial.  
Timothy H.
, 301 Ill. App. 3d at 1015.  The trial court is vested with the discretion to determine which instructions to give to a jury, and we will not disturb its determination absent an abuse of that discretion.  
Timothy H.
, 301 Ill. App. 3d at 1015.  Generally, the use of Illinois Pattern Jury Instructions is required unless the trial court determines that they are inaccurate statements of the law.  134 Ill. 2d R. 239(a); 
Timothy H.
, 301 Ill. App. 3d at 1015.

Using the State's tendered instructions, the trial court instructed the jury:

"The Petitioner has the burden of proving each of the following propositions by clear and convincing evidence:

* * *

Proposition 5:  That the Respondent lacks the capability to make a reasoned decision about the medication[]"

and

"In determining whether or not Respondent lacks the capacity to make a reasoned decision concerning the administration of psychotropic medication, you should consider the following factors:

1.  Respondent's knowledge that [s]he has a choice to make;

2.  Respondent's ability to understand the available options, their advantages and disadvantages;

3.  Whether Respondent is a voluntary or involuntary patient;

4.  Whether Respondent has previously received the type of medication at issue;

5.  Whether, if Respondent has received similar treatment in the past, [s]he can describe what happened as a result and how the effects were beneficial or harmful;

6. Whether Respondent has any interfering pathological perceptions or beliefs or any interfering emotional states which might prevent an understanding of legitimate risks or benefits.

None of these factors should be considered dispositive, and you should consider any other relevant factors which you deem might be present."

Here, the State had the burden of proving, by clear and convincing evidence, that respondent lacked the capacity to make a reasoned decision regarding her medication.  Neither party propounded or requested an instruction regarding the presumption of capacity.  Generally, the party that desires a specific instruction bears the burden to tender it to the trial court and request that it be given to the jury.  
Timothy H.
, 301 Ill. App. 3d at 1016.  However, to ensure that a respondent receives a fair trial in a proceeding to involuntarily administer psychotropic medication, a trial court is required to offer an instruction 
sua sponte
 if it relates to the elements ultimately authorizing the administration of psychotropic medication, the question of the burden of proof, and a definition or description of the applicable burden of proof as provided in the Illinois Pattern Jury Instructions.  
Timothy H.
, 301 Ill. App. 3d at 1016.

Respondent's contention of error in the present case concerns an instruction relating to the elements ultimately authorizing the administration of psychotropic medication.  The jury received an instruction regarding the statutory elements required for granting the State's petition.  Additionally, the jury received an instruction on factors to consider in determining whether respondent lacked the capacity to make a reasoned decision concerning the administration of psychotropic medication.  Although the better practice would be to tender an instruction reflecting that a respondent is presumed competent until proved otherwise (
In re Perona
, 294 Ill. App. 3d 755, 763 (1998)), we find that the instructions concerning the element of capacity adequately provided the jury with the correct statement of the law applicable to the case and that the trial court was not required to 
sua sponte
 provide an instruction on the presumption of capacity.  Therefore, we hold that the trial court did not abuse its discretion when it did not provide an instruction on the presumption of capacity.

Furthermore, respondent was not denied a fair trial and the trial court did not abuse its discretion when it did not 
sua sponte
 give a limiting instruction with respect to Rosanova's testimony. Rosanova testified that, in forming the basis for her opinion of respondent's mental health, she relied on respondent's past hospital records, conversations with hospital staff, correspondence from the State's Attorney's office in Cook County, and letters that respondent wrote to Brian C.  In mental health cases, the State must present, 
inter alia
, an explicit expert opinion.  
In re Cutsinger
, 186 Ill. App. 3d 219, 223 (1989).  In presenting this opinion, the expert may testify to the underlying bases of the opinion.  
People v. Anderson
, 113 Ill. 2d 1, 12 (1986).  Under Rule 703 of the Federal Rules of Evidence (Fed. R. Evid. 703), "expert witnesses may disclose the contents of otherwise inadmissible materials upon which they reasonably rely."  
Anderson
, 113 Ill. 2d at 8-9, citing 
Wilson v. Clark
, 84 Ill. 2d 186, 194 (1981).

In the present case, Rosanova's testimony was properly admissible for the limited purpose of explaining the basis for her opinion.  A limiting instruction is ordinarily the proper remedy when this type of testimony was admitted for only a limited purpose and respondent would have been entitled to such an instruction upon request.  Respondent acknowledges that her trial counsel made a mistake.  However, despite respondent's failure to request a limiting instruction and the trial court's failure to offer a limiting instruction, we find that respondent was not deprived of a fair trial.  See 
People v. Scott
, 148 Ill. 2d 479, 527-28 (1992) (holding that the defendant was not deprived of a fair trial by the court's failure to 
sua sponte
 offer a limiting instruction regarding testimony from opinion witnesses who used the defendant's psychiatric reports in making a diagnosis of the defendant's mental health).  Counsel for respondent argued throughout the proceedings that certain evidence was admissible only for a limited purpose but, for whatever reason, failed to offer or request a limiting instruction.  Based on our review of the record, we hold that respondent was not denied a fair trial and the trial court did not abuse its discretion in not offering a limiting instruction with respect to Rosanova's testimony.

Respondent next contends that the verdict form and the trial court's subsequent order were insufficient because the verdict form should have specifically listed each of the requested medications.  Respondent argues that, as a result, the trial court's written order, which specified the authorized medications, invaded the province of the jury by preventing it from making the determination of whether the benefits of each of the three proposed medications outweighed the risks.  The State argues that this issue is waived because respondent failed to object to the verdict forms and failed to tender any alternative verdict forms.  Nevertheless, we may apply the plain error doctrine despite a claim of waiver where the alleged error is so substantial as to reflect on the fairness or impartiality of the trial, regardless of how closely balanced the evidence is, or where the jury's verdict may have resulted from the error.  See 
People v. Fields
, 170 Ill. App. 3d 1, 9 (1988).  Because respondent alleges error in the form of the verdict presented to the jury, we will consider respondent's contention regarding the jury's verdict under the plain error doctrine.

In the present case, the signed verdict form states:

"We the Jury, find for the Petitioner, and against the Respondent ***.  We find that the Respondent is someone who qualifies for the involuntary administration of psychotropic medication."

The trial court's written order states, in relevant part:

"This court enters judgment on the verdict.  The following medications are to be administered for a period not to exceed 90 days:

Haldol  10 - 20 mg/day

Olanzapine  10 - 20 mg/day

Risperdal  2 - 6 mg/day."

In a proceeding to authorize the administration of psychotropic medication against a patient's will, the State must prove the existence of all seven factors listed in section 2--

107.1(a)(4) of the Mental Health Code by clear and convincing evidence.  405 ILCS 5/2--107.1(a)(4) (West 1998).  Those factors encompass a myriad of factual determinations.  
In re Jakush
, 311 Ill. App. 3d 940, 947 (2000).  Section 2--107.1(a)(4)(D) of the Mental Health Code states that the authorized involuntary treatment shall not be administered to the recipient unless it has been determined by clear and convincing evidence that the benefits of the treatment outweigh the harm.  405 ILCS 5/2--107.1(a)(4)(A) (West 1998).  The entity entrusted to determine whether the benefits of the treatment outweigh the harm is the finder of fact, that is, either the judge in a bench trial or the jury in a jury trial.  See 405 ILCS 5/2--107.1(a)(3), 3--802 (West 1998).  In the present case, respondent requested a trial by jury; therefore, whether the benefits of the proposed medication outweighed the harm was a factual issue for the jury to determine.  See 
In re Kness
, 277 Ill. App. 3d 711, 720 (1996).

In a jury trial, the verdict, if supported by the evidence, is the basis on which the judgment of the trial court is rendered.  
Crowell v. Parrish
, 159 Ill. App. 3d 604, 608 (1987).  Therefore, following a jury trial and the jury's verdict, the trial court must enter judgment on the verdict, unless a sufficient reason exists for rendering a judgment notwithstanding the verdict.  
Crowell
, 159 Ill. App. 3d at 608.  A trial court can amend a verdict only to make the verdict conform with the clear intention of the jury.  
Crowell
, 159 Ill. App. 3d at 609.  A trial court should not amend a verdict to obtain a determination that it believes the jury ought to have made.  
Anderson v. Smith
, 91 Ill. App. 3d 938, 941 (1980).

A review of the record reflects that, at trial, respondent testified that, if ordered, she would take Olanzapine or Risperdal.  Rosanova testified that Olanzapine and Risperdal were newer medications that were more effective and had fewer side effects than other medications previously used.  Rosanova testified that Haldol could control respondent's positive symptoms of mental illness but that Olanzapine and Risperdal did a much better job, and Haldol had many side effects.  Rosanova further testified that Olanzapine and Risperdal carried only a minimal risk of the more serious side effects.  Rosanova was not requesting to administer all three simultaneously but requesting a type of alternative relief.  The very nature of Rosanova's and respondent's testimony placed the three specific medications at issue and should have alerted counsel to a particular dispute for the jury to resolve.

Despite Rosanova's testimony that the medications were very different, the verdict forms did not distinguish the medications.  Based on the testimony presented, the jury reasonably could have found that the benefits of administering either Olanzapine or Risperdal to respondent outweighed the harm and that the benefit of administering Haldol to respondent did not outweigh the harm to her.  However, the jury's verdict simply states that respondent qualifies for the involuntary administration of psychotropic medication.  The verdict does not show that the jury found that the benefits of administering Haldol to respondent outweighed the harm it would pose to her, nor does it show that the benefits of administering Risperdal or Olanzapine to respondent outweighed the harm.  The verdict here fails to show that the jury clearly intended to authorize the involuntary administration of all three medications.

We are persuaded by the reasoning and analysis set forth recently in the case of 
In re Len P.
, 302 Ill. App. 3d 281 (1999).  In 
Len P.
, the respondent appealed the trial court's order authorizing the involuntary administration of psychotropic medication and argued, 
inter alia
, that the order failed to specify the type or dosage of medication to be administered.  This court reviewed section 2--107.1(a)(6) of the Mental Health Code, which requires the order to " 'specify the medications and the anticipated range of dosages that have been authorized.' "  
Len P.
, 302 Ill. App. 3d at 285, quoting 405 ILCS 5/2--107.1(a)(6) (West Supp. 1997).  The testimony concerning the medication was vague, and the State failed to present any testimony regarding the dosage.  The trial court's order was silent and failed to comply with the statute.  We noted that the type of medication the State wishes to involuntarily administer to a respondent was a necessary component of the statutory element to prove that the benefits of the medication outweigh the harm and the failure to prove that component was not merely a procedural defect.  
Len P.
, 302 Ill. App. 3d at 286.  We concluded that the error in failing to specify the type and dosage of medication was more of substantive right than a procedural formality and reversed the order of the trial court.  
Len P.
, 302 Ill. App. 3d at 286.

Pursuant to our analysis in 
Len P.
, inherent in an order that specifies the medications and the anticipated range of dosages is a finding that the benefits of those particular medications outweighed the potential harm to a person subject to the involuntary administration of those medications.  In a bench trial, the trial court, as the finder of fact, makes those findings and incorporates its findings into an order authorizing the involuntary administration of psychotropic medication, setting forth the specific medications and anticipated range of dosages.  See 405 ILCS 5/2--107.1(a)(6) (West 1998).  Likewise, in a jury trial, the jury, as the finder of fact, should make findings regarding the medications the State seeks to involuntarily administer to a respondent, either in special interrogatories or within its verdict.  Those findings should include whether the benefits of a particular medication outweigh the harm.  See 405 ILCS 5/2--

107.1(a)(4)(D) (West 1998).  Thereafter, should a jury ultimately decide a case in favor of the State on the issue of the involuntary administration of psychotropic medication, its verdict should show that it clearly intended to authorize the involuntary administration of specific medications.

In the present case, the trial court's order was required to reflect the decision of the trier of fact.  Because it did not, respondent was denied her right to a fair trial.  Therefore, the trial court erred when it decided which medications to involuntarily administer to respondent.  It was the jury's decision to make.

We cannot simply say this was harmless error, either, because the jury's deliberations and ultimate decision were rendered through an improper scope of analysis.  See 
Timothy H.
, 301 Ill. App. 3d at 1016.  We hold that the fairness of this trial was compromised when the jurors were not afforded an opportunity to determine which medications respondent should have been involuntarily administered or whether the benefits to respondent outweighed the harm, including the potentially harmful side effects, as to Haldol, Risperdal, or Olanzapine.  

Our determination that respondent was denied her due process right to a fair trial in that the jury was given inadequate verdict forms obviates the need to address respondent's remaining issue on appeal.  A remand is not in order, as the proceedings are concluded.  If the State believes that respondent remains in need of involuntary administration of psychotropic medication, it must initiate new proceedings in the trial court.  See 
In re Barbara H.
, 183 Ill. 2d at 498.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed.

Reversed.

BOWMAN, P.J., and McLAREN, J., concur.