THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SELBERT D. RODGERS, Defendant-Appellant.

Fifth District No. 5—95—0107

Opinion filed May 14, 1997.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Donna Hickstein-Foley, of Foley & Foley, of Chicago, for appellant.

Teresa Brown, State's Attorney, of Taylorville (Norbert J. Goetten, Stephen E. Norris, and James Souk, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

· JUSTICE GOLDENHERSH delivered the opinion of the court:

After a jury trial in the circuit court of Christian County defendant, Selbert D. Rodgers, was convicted of aggravated criminal sexual abuse (720 ILCS 5/12—16(b) (West 1992)) and criminal sexual assault (720 ILCS 5/12—13(a)(3) (West 1992)) against the victim, A.B., defendant's granddaughter. Defendant was sentenced to 12 years in the Department of Corrections on count I and five years in the Department of Corrections on count II, to run concurrently to count I. On appeal, defendant raises three issues: (1) whether the trial court erred in denying his motion to discharge the jury panel, after a news conference at which potential jurors were present was held inside the courthouse by the victim's mother alleging that she was abused by defendant during her childhood; (2) whether the trial court erred in denying defendant's motion for a new trial based upon a juror's failure to disclose during *voir dire* that she had an association with defendant's family; and (3) whether the trial court erred in denying defendant's motion for a continuance. We affirm.

## FACTS

On March 3, 1994, defendant was charged by information with the aforementioned offenses involving his granddaughter. The first count alleged that defendant:

"[C]ommitted the offense of AGGRAVATED CRIMINAL SEXUAL ABUSE in that the defendant committed an act of sexual conduct with a female who was under 18 years of age when the act was committed and who is herein identified as A.B., and, further, with the defendant being a family member, that is the grandfather of A.B., in that the defendant did intentionally or knowingly touch or fondle, either directly or through clothing, the sex organ of A.B. for the purpose of sexual gratification or arousal of the defendant in the month of February of 1994 ***."

The second count alleged that defendant committed the offense of criminal sexual assault against the same victim "in that the defendant did place the sex organ of the defendant in contact with or into the sex organ of A.B., in the month of February of 1994."

While *voir dire* was still in progress, another judge in the courthouse notified the trial judge in the instant case that a television interview was being conducted in the hallway of the courthouse concerning the instant charges. The victim's mother was allegedly relaying to a television news reporting crew that she had been sexually abused by defendant during her own childhood. The State's Attorney later reported that a support person from the rape intervention crisis service was standing close to where the interview was being conducted and the support person thought that juror number 9 heard the interview. Juror number 9 had already been accepted on the panel. The State's Attorney informed the court that the State had used its last peremptory challenge and, therefore, if the court did not strike juror number 9 for cause, the State would ask that the panel be discharged. At this point, 10 jurors were already chosen to be on this jury. The trial court inquired as to whether any of these 10 jurors overheard the interview. The only juror who admitted being in the hallway when the interview was conducted was juror number 9, but juror number 9 denied hearing any part of the interview.

The court was satisfied the jury was not tainted, but defense counsel moved that the jury be discharged. The trial court then asked the judge who witnessed the interview whether he remembered which prospective jurors were within earshot of the interview. That judge reported that he saw three prospective jurors within earshot of the interview, and he gave the trial judge the badge numbers of those particular jurors. None of the three were currently empaneled, nor were they in the jury box awaiting questioning. Ultimately, the trial court denied defendant's motion to discharge the panel but allowed defendant to dismiss juror number 9 for cause. The trial court inquired of the remaining jurors already empaneled whether they heard any secondhand information about the interview in the hallway. None of the nine jurors already empaneled responded affirmatively.

The trial court noted that it would ask other venirepersons if they were present in the hallway when the interview took place. At that point, two more jurors and one alternate still needed to be chosen. Out of the next four venirepersons interviewed, the third of the four, juror number 20, admitted to being in the hallway when the interview was conducted but denied overhearing any part of it. The two prospective jurors before number 20 were chosen for the jury. The defense attorney then utilized his strike against juror number 20 as an alternate, and the State's Attorney utilized its strike against the final prospective juror out of that group of four. The next venireperson was chosen as the alternate. Neither the State nor the defense

had any questions for him. The trial court then released the jury for the day, but not before admonishing it not to watch any local television news that evening, listen to any radio broadcasts, or read any newspaper articles concerning the instant case.

The following morning, the trial court inquired of the alternate whether he was in the hallway when the interview was conducted, and he answered he was not. The trial court also inquired generally as to whether any of the jurors heard anything on the television or radio the previous evening. There was no response.

■ The issue we are asked to address is whether the trial court erred in denying defendant's motion for a new trial based upon a juror's failure to disclose during *voir dire* that she had an association with defendant's family. Defendant contends that his defense counsel learned through family members about this relationship between defendant's family and one of the jurors and that defense counsel's representation to the trial court concerning this connection was sufficient to warrant an evidentiary hearing at the very least. Defendant insists that the trial court abused its discretion in failing to grant defendant a new trial or an evidentiary hearing and denied him his right to a fair trial. The State responds, first, that defendant's failure to raise the issue in a written motion for a new trial constitutes waiver of the issue. Second, assuming, *arguendo*, that the issue is not waived because of defense counsel's oral arguments during the hearing on the motion for a new trial, the State responds that the sparse information provided to the trial court on this issue was not enough for defendant to meet his burden of proof and, therefore, it cannot be said that the trial court abused its discretion in denying defendant's motion for a new trial.

The general rule is that the failure to raise an issue in a written motion for a new trial constitutes a waiver of that issue and the issue cannot be raised as a grounds for reversal or appeal. *People v. Porter*, 111 Ill. 2d 386, 399, 489 N.E.2d 1329, 1334 (1986); *People v. Caballero*, 102 Ill. 2d 23, 31, 464 N.E.2d 223, 227 (1984); *People v. Irwin*, 32 Ill. 2d 441, 443, 207 N.E.2d 76, 78 (1965). In the instant case, a review of defendant's motion for a new trial reveals that defendant failed to specifically raise the issue of a relationship between defendant's family and one of the jurors. Therefore, the issue is waived. Even assuming, *arguendo*, the issue was not waived, we find that defendant was not denied a fair trial.

■ The grant or denial of a new trial because of the claimed disqualification of a juror is within the sound discretion of the trial court. *Porter*, 111 Ill. 2d at 403, 489 N.E.2d at 1336. The mere suspicion of bias or partiality is not sufficient to disqualify a juror.

*People v. Collins*, 106 Ill. 2d 237, 274, 478 N.E.2d 267, 283 (1985). The burden of proof is on the defendant to support the allegations of his posttrial motion. *Porter*, 111 Ill. 2d at 403, 489 N.E.2d at 1336.

 In the instant case, the only argument raised by defendant on this issue was at the hearing on his motion for a new trial when defense counsel alleged:

> "The points I would like to address today[—]since the trial it has been brought to my attention by members of Defendant's family that at least one of the jurors was close friends with the family of the Defendant and, apparently, did not answer that in *voir dire*."

The record, however, does not even disclose the name of the alleged juror, the extent or duration of the friendship, or how defendant was prejudiced by this juror's service. As the trial court pointed out, defendant failed to submit any affidavits from either the alleged juror or any of the family members in support of this allegation of a relationship between defendant's family and the juror. Therefore, defendant failed to sustain his burden of proof on this issue. We cannot agree that defendant is entitled to an evidentiary hearing, much less a new trial, given the lack of support in the record for defendant's allegations regarding this issue.

The final issue we are asked to address is whether the trial court erred in denying defendant's motion for a continuance. Defendant contends the trial court erred when it denied defendant's motion for a continuance to allow the testimony of a witness material to the defense and when it denied defendant's motion for a continuance because of prejudicial pretrial publicity. We have previously addressed the issue of alleged pretrial publicity and need not do so again. As to the issue of a continuance because of the unavailability of a witness, defendant contends that his motion should have been allowed so that Dr. Lee G. Endsley could have been available. Defendant alleged in his motion that Dr. Endsley conducted medical tests on defendant on May 23, 1994, which showed defendant to be impotent. Defendant contends that the doctor's testimony was material to his defense since it evidenced his physical inability to commit the offense of criminal sexual abuse as charged in the second count. The State replies that defendant failed to establish diligence in securing the witness's presence, materiality, or prejudice to defendant. A review of the record shows that the State is correct.

On the date jury selection began, defense counsel made an oral motion to continue because Dr. Endsley would not be present. Defense counsel explained that he did not subpoena the doctor nor did he apply for funds to call this witness because the doctor was suffering from lung cancer, which defense counsel assumed would prevent him

from being present at this time. The prosecutor argued that there was no reporter affidavit on file to support a claim of materiality. In response, defense counsel produced a document, later attached to a written motion filed the next day, which included a diagnosis of "PT STS IMPOTENCE." The trial court denied defendant's oral motion, noting that the case was set for trial on this date for over one month and had twice been continued on defendant's motion prior to that court setting. The following day, a written motion was submitted, and defendant was again given the opportunity to argue the issue. Upon the trial court's inquiry, defense counsel admitted that he had not spoken with Dr. Endsley and did not know whether the doctor could testify that defendant was impotent in February 1994, the date covered by the charges against defendant. Defense counsel further admitted that he was unsure what "PT STS IMPOTENCE" stands for and that neither he nor defendant had checked on the doctor's availability since the trial court's denial of the motion to continue on the previous day.

■ To obtain a continuance in order to secure the presence of a witness, a defendant must establish that he has been diligent in attempting to locate the witness, that the evidence would be material, and that he would be prejudiced by the absence of the testimony. *People v. Ward*, 154 Ill. 2d 272, 307, 609 N.E.2d 252, 265 (1992). A motion for continuance is left to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v. Hanson*, 120 Ill. App. 3d 84, 88, 457 N.E.2d 1048, 1051 (1983).

■ Here, the case was continued on two previous occasions prior to this setting, on defendant's request. Moreover, on the date of jury selection, defense counsel orally moved for a continuance but did not attempt to contact the doctor between the end of the first court day and the beginning of the second. Thus, defendant cannot establish diligence. Moreover, without any explanation as to what "PT STS IMPOTENCE" means, we are unable to say whether the evidence would have been material or whether defendant would have been prejudiced without its introduction. As the prosecutor pointed out at trial, this could have meant nothing more than "patient states impotence." Defendant failed to meet his burden. Therefore, we cannot say that the trial court abused its discretion in denying defendant's motion for a continuance.

For the foregoing reasons, the judgment of the circuit court of Christian County is affirmed.

Affirmed.

KUEHN, P.J., and MAAG, J., concur.