(No. 32807.—

JOHN EDWIN JOHNSON *et al.,* Appellees, *vs.* JOHN EMOR JOHNSON *et al.,* Appellants.

*Opinion filed November 18, 1953.*

320

PATRICK J. CAHILL, and BERNARD A. CUMMINS, both of Chicago, for appellants.

JACK FREEMAN, of Chicago, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is an appeal from a decree entered by the circuit court of Cook County in favor of the plaintiffs, John Edwin Johnson and Hannah Elizabeth Johnson, his wife, against the defendants, John Emor Johnson and Mildred

Johnson, his wife, and the registrar of titles of Cook County, impressing a parcel of real estate in the city of Chicago with a resulting trust and directing a conveyance to plaintiffs. Since a freehold is involved, the appeal has been perfected to this court.

In April, 1942, the disputed property, which consisted of a lot in a new subdivision upon which a modest dwelling was being erected, was viewed by several members of the Johnson family and later purchased. Title was placed in the name of the defendant, John Emor Johnson, who will, for convenience be hereinafter referred to as Emor. The total cost was $5700, of which $500 was paid in cash and the balance evidenced by a note secured by a mortgage payable in monthly installments. When the construction was completed in May, 1942, Emor and his parents, the plaintiffs, moved into the dwelling. Three years later, and just before his marriage, Emor executed a deed to the property to plaintiffs and they signed a deed back to him reserving therein a life estate.

It is contended by plaintiffs that they were the purchasers of the property in question and, although the legal title was vested in Emor, that they were the actual owners and that he held title in trust for them at all times. They further contend that Emor, recognizing their right to the property, conveyed it back to them; and that a deed from them back to Emor, in which they reserved a life estate, was executed without knowledge of its effect and that it was not delivered.

This suit was filed in February, 1951, and was referred to the master in chancery, who took evidence and recommended a decree in favor of the plaintiffs. Objections to the master's report were overruled and the trial court approved the master's report and entered a decree in accordance with the prayer of the complaint.

There are two separate and distinct phases to this case. First, whether a trust resulted in favor of the plaintiffs at

the time of taking title originally; and second, in the event there was such a resulting trust, the effect which must be given the later exchange of deeds. There seems to be a considerable shift of position by both parties between their pleadings and the proof below, on the one hand, and their respective positions on appeal, on the other. Much of the record is made up of evidence relative to the first phase, but the parties here concentrate upon the second.

While there was conflict in the evidence relative to the original purchase of the property in question, the following facts appear: Hannah Johnson was the prime mover in the contemplated purchase of a home. She had previously made a down payment on a property but the deal was not consummated and the payment was returned. In March, 1942, the plaintiffs, accompanied by their son Robert, looked at the disputed property with a view of purchasing it. The following day Hannah and her sons, Robert and Emor, again went to see it and then went to the real-estate dealer who was handling the property. At the suggestion of the dealer it was agreed that title should be placed in Emor's name since it was impractical to get a mortgage loan for plaintiffs because of their advanced age. There was some question of Emor's financial responsibility because he did not have steady work, and Robert agreed to and did act as a cosigner upon the note for the deferred balance of the purchase price. Robert's uncontradicted testimony was that the cosigning was for the accommodation of his parents, not his brother Emor. A down payment of $25 was made by Robert and the balance due on the property over the mortgage was largely raised by Hannah through borrowings.

Emor testified that for many years prior to April, 1942, he had lived with his parents, had delivered his wages to his mother, and had continued to do so until his marriage in 1945, and that she used his funds so delivered for the down payment and for the mortgage installments from the

date of the purchase until his marriage. Other members of the family related that much of the time Emor's work was seasonal, that his mother gave him such funds as he from time to time required and that money paid over by him was just about equal to his board. Both parents worked and had income therefrom. The father was employed as a watchman since 1939 and as a bricklayer prior to that time. Hannah worked as a waitress in a cafeteria, prepared food for a steam table for another employer and later worked by the day until Emor's marriage. In the absence of any proof of extravagance on the part of Hannah, the fact that she had to raise funds by borrowings to make the small down payment amply justifies the master's findings that contributions made by Emor to his mother were no more than sufficient to pay his board.

Without going into further details as to the method of raising funds for the down payment, we are of the opinion that the record affirmatively shows that Hannah raised the money for the equity, that she and her husband were the actual purchasers and that title was placed in Emor's name as a convenience. While the answer denied that a trust resulted and much proof was offered to support the denial, counsel for the defendants practically concede that the case must stand or fall on the effect of a deed made by plaintiffs to Emor in the year 1945.

If a trust resulted from the original transaction, it arose at the time title vested and not on acts arising thereafter. (*Murray* v. *Behrendt,* 399 Ill. 22; *Brod* v. *Brod,* 390 Ill. 312.) On the other hand, if no trust resulted in the original taking of title there is certainly nothing in the record to support the theory of a resulting trust, since legal title was vested in Emor at all times until the conveyance to his parents, which was made without any proved consideration.

A resulting trust does not depend on contract or agreement but is founded on a presumed intent which arises out

of the acts of the parties and by implication of law. (*Kane* v. *Johnson,* 397 Ill. 112; *Cook* v. *Blazis,* 365 Ill. 625; *Tuntland* v. *Haugen,* 399 Ill. 595.) In its most common application, a resulting trust arises from the fact that one person furnishes the consideration for the purchase of land while the conveyance is taken in the name of another. (*Frasier* v. *Finlay,* 375 Ill. 78; *Tuntland* v. *Haugen,* 399 Ill. 595.) The burden of proof is upon the party seeking to establish a resulting trust, and the evidence must be clear, strong, unequivocal and so convincing as to lead to but one conclusion. *Houdek* v. *Ehrenberger,* 397 Ill. 62; *Jones* v. *Koepke,* 387 Ill. 97; *Heineman* v. *Hermann,* 385 Ill. 191.

We are of the opinion that the evidence clearly indicates that at the time of the original purchase, the defendant John Emor Johnson took the legal title to the property in question for the use and benefit of the plaintiffs and that a trust resulted in their favor. The remaining question therefore, is the effect of the two deeds between the parties dated April 17, 1945.

John Emor moved into the property in dispute with his parents shortly after its purchase in 1942. He continued to live there with them until his marriage on April 21, 1945. Thereafter he and his wife moved in and stayed for about three months. He testified that he made six monthly mortgage payments prior to his marriage and his wife testified that she made one shortly thereafter. The record discloses that a room was built in the attic in anticipation of the marriage and it appears to have been the intent of the parties that they jointly occupy the premises. A son-in-law did most of the carpentering. Emor did some of the painting, and a substantial part of the material cost was paid by the plaintiff Hannah Johnson in installments over a period of two years.

Our prior comments relative to Emor's contributions to the mother prior to the original purchase apply here as to

those contributions made from the date of purchase to his marriage. An additional circumstance which tends to refute the son's contention that payments were made from his funds is that there is no proof in the record of any agreement that the funds paid to Hannah were to be for the use and benefit of or subject to disposal by her son Emor. It is evident that practically all of the mortgage payments and taxes were paid by the plaintiffs from their own funds from the time of the acquisition of the property to the son's marriage and from thence to the filing of this suit in 1951. The decorating, landscaping and other work done upon the property and the few small payments made for materials and mortgage installments by Emor were no more than any son would be expected to contribute for the maintenance of a household where he was residing.

There is evidence that plaintiffs feared they would be put out of the house when Emor got married and that Emor threatened to do so. Arguments ensued which resulted in physical violence. Hannah Johnson insisted that the property be deeded to them and Emor consented to do so. She went to the real estate agency where the mortgage payments were made and consulted a salesman who was not an attorney. He prepared two deeds, the first of which was from Emor to his parents, the plaintiffs, as joint tenants, and the second was from the parents to him but reserving therein a life estate. Hannah Johnson took them home and presented the first deed to Emor for signature. He signed it without protest and handed it to his mother. On the same day plaintiffs signed the second deed. Both deeds were then taken by the mother to the real-estate agency which had them filed in the registrar's office and returned to her. She kept them in her possession at all times thereafter.

The plaintiffs, who were each approximately at the age of 70 years at the time of the signing of the deeds, allege that they thought by the transactions they were securing

title to themselves and that they did not know until February, 1951, that by the conveyances they had only a life estate. There is evidence in the record that none of the parties to the deeds understood the legal effect of the transaction. Brief examples of such evidence are as follows: John Edwin Johnson in answer to a question if he remembered how he came to sign "that paper" said, "No, I don't. Because somebody asked me to sign it and I signed it;" and again, when asked if he knew what was in the deed, he replied, "No, I didn't. I don't know yet." Throughout the testimony of Hannah Johnson, in referring to the deeds she would say "that paper" or "those papers." John Emor Johnson, when asked about what happened, testified, "They insisted—my mother did, more than anybody else—they were afraid they were going to be put out of the house. So, I agreed to sign some papers giving them proof that they couldn't be put out of the house. She went and got those papers and I signed them just the way she wanted."

This phase of the case turns strictly upon the facts. While there is great confusion in the testimony, it should be noted that the master found, with the trial court concurring, that the deed back to Emor reserving only a life estate was not understandingly made. The strongest evidence adduced on behalf of the defendants was that of one Despres, the real-estate salesman who drafted the deeds and who was practically the only disinterested witness. Even he testified that Hannah Johnson did not mention a life estate and the clause reserving the life estate was put in by him although no one told him to do so.

In addition to the contention that the deed was not understandingly made, plaintiffs allege that there was no delivery. Defendants complain, however, that the issue of delivery was not raised by the pleadings, and cite *Houdek* v. *Ehrenberger,* 397 Ill. 62, and *Roche* v. *Roche,* 286 Ill. 336. In each of those cases the court specifically found that the issue of delivery was not raised in the trial court. It is

true that the complaint alleged nondelivery only in general terms, but the answer affirmatively alleges delivery and the reply denies that allegation. It is our belief and we hold that the issue of delivery was fairly raised.

If the *Houdek* and *Roche cases* were cited in support of their position that there was a delivery, neither is in point since each involves the question of delivery of the original deed out of which the respective trusts were alleged to have arisen. The question here is not whether the original deed was delivered but involves the delivery of a deed made after title had been restored to plaintiffs 'by virtue of the trust which we have heretofore found was impressed upon the title at the time of the delivery of the original deed.

Intention is the controlling element which determines whether a deed has been delivered and the question must depend in great measure upon the peculiar circumstances of each case. (*Fonda* v. *Miller,* 411 Ill. 74; *Hoyt* v. *Northup,* 256 Ill. 604; *Vaughn* v. *Vaughn,* 272 Ill. 11.) If the deed back to Emor was not understandingly made, and again the master and chancellor so found, then certainly the facts do not justify a finding that it was the intention of the grantors to make a delivery.

The strained relations between these parties, which is evident throughout the record, effectively rule out any question about a transfer being in the nature of a voluntary settlement, and any presumption of a delivery by virtue of their relationship has been overcome.

It is well established that the law applicable in a case such as this, where no fiduciary relationship is charged, is that the burden of proof is upon the plaintiff to show by clear and convincing proof that the deed in question was not understandingly made. *Holbrook* v. *Tomlinson,* 304 Ill. 579.

The master saw and heard the witnesses, including the aged couple who are the plaintiffs here. He had the oppor-

tunity to observe their lack of understanding of business affairs which is so apparent from the record. The hearings were fairly conducted without undue haste. It was the duty of the master to determine the facts. While his findings of fact do not carry the same weight as a jury, they are entitled to due weight on review and will not be disturbed unless manifestly against the weight of the evidence. (*Pasedach* v. *Auw,* 364 Ill. 491; *Stowell* v. *Satorious,* 413 Ill. 482; *Lucas* v. *Westray,* 408 Ill. 243.) The findings were amply supported by the evidence, and the trial court so found. The record here does not justify our disturbing the findings.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*