*In re* R.W. (The People of the State of Illinois, Petitioner-Appellee, v. R.W., Respondent-Appellant).

Fifth District   No. 5—01—0190

Opinion filed July 24, 2002.

Jeff M. Plesko and Penelope S. Karnes, both of Guardianship and Advocacy Commission, of Anna, for appellant.

Darrell Williamson, State's Attorney, of Chester (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

R.W. (respondent) appeals from an order of the circuit court of Randolph County authorizing the involuntary administration of psychotropic medications, as well as the performance of certain testing and other procedures for a period of 90 days pursuant to the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—100 *et seq.* (West 2000)). On appeal, respondent raises the following issues regarding his right to a fair trial: (1) whether the court failed to define "clear and convincing evidence," (2) whether the trial judge submitted a verdict form that failed to specify medications, dosages, and who could administer medications, (3) whether the instructions failed to address an amendment to the Code, and (4) whether he was improperly denied his right to a court-appointed examiner. We affirm.

## I. FACTS

A petition for the administration of authorized involuntary treatment was filed against respondent by the Chester Mental Health Center. In the petition, the State sought the authority to administer olanzapine or risperidone. In the alternative, the State sought to administer Haldol or decanoate. Finally, the State sought to administer Benztropine-Cogentin for side effects. The petition also sought authorization for certain forms of testing. Respondent requested a jury trial, and the matter was continued to a jury docket. On the date the jury selection was to begin, respondent informed the court that he previously had only minimal contact with his court-appointed attorney and had been uncertain when he could request an independent examiner. Respondent stated that he had contacted a private examiner in Chicago but that no arrangements had been made. Respondent indicated he would be willing to be examined that afternoon. The court denied respondent's motion and the hearing was held.

Dr. Gesmundo, a treating psychiatrist, was called as the sole witness for the State. Dr. Gesmundo diagnosed respondent as schizophrenic and described him as suspicious, paranoid, delusional, uncooperative, agitated, and aggressive. Dr. Gesmundo testified that when respondent was taking medication, he was more cooperative and manageable. According to Dr. Gesmundo, respondent made threats and attacks after he stopped taking medications. Dr. Gesmundo described the proposed treatment:

"MR. BURKE [Assistant State's Attorney]: Doctor, in your opinion[,] based on a reasonable degree of psychiatric certainty, would psychotropic medication be beneficial for [respondent] at this time?

DR. GESMUNDO: I would like to try him on olanzapine or Zyprexa and[/]or Risperdal again.

Q. And in what dosages would you like to try him?

A. I would like to try him as much to [sic] a size twenty milligrams of olanzapine or Zyprexa or a size six milligrams of risperidone.

Q. Are there any other medications you would like to be able to give him at this time?

A. If he refuses because this [sic] medications are only available in oral forms, tablet forms[,] or concentrate forms[—][t]hey're not available [in] injection form—I would like to try him on [the] Haldol shot whenever [he] refuses to take this olanzapine or Zyprexa or risperidone.

Q. And are there any medications you would like to be able to give him to deal with side effects or possible side effects?

A. Yes, I will give him also Cogentin or [inaudible] for side effects."

Dr. Gesmundo stated that she would need to do testing to measure the effects of the medication. Dr. Gesmundo testified that she believed that the benefits of the medication outweighed the harm and that respondent lacked the capacity to make a reasoned decision regarding medication.

Respondent testified that when he had taken medication previously, it made his feet break out in black spots and made him dizzy. Respondent denied that he was mentally ill or that he had been aggressive to staff.

The matter was submitted to the jury on instructions submitted by the State, without objection. Dr. Gesmundo was recalled outside the presence of the jury, where she was again questioned regarding the medications:

"MR. BURKE: Okay. Doctor, I just want you to go through the medications and the dosage ranges you would like the Court to allow you to administer to the recipient[.]

DR. GESMUNDO: Okay. My first choice would be olanzapine or Zyprexa, five milligrams to twenty milligrams per day. The second choice would be risperidone or Risperdal, two milligrams to six milligrams per day[,] or if he refuses to take either one of these two, Haldol oral or injection or decanoate, ten to fifty milligrams in oral equivalent dose, and side[-]effect medication like benztropine or Cogentin injection prn for side effects, one to four milligrams per day.

Q. And the testing procedures that would allow you to administer them safely to [respondent]?

A. Okay. CBC, blood chemistry, serum electrolytes, liver function test[,] and urinalysis.

MR. BURKE: I don't have any other questions, Your Honor.

THE COURT: Mr. Fricke.

MR. FRICKE [Defense counsel]: No questions, Your Honor. I can understand what the doctor just said.

THE COURT: Okay. That's all I need on the record."

The jury returned with a general verdict for the administration of psychotropic medications. The court then entered an order authorizing the administration of medication as outlined in the petition: olanzapine, risperidone, Haldol, or decanoate, and Benztropine-Cogentin for side effects, for a period of 90 days. Respondent appeals.

## II. ANALYSIS

### A. The Right to a Court-Appointed Examiner

■ Respondent contends that he was denied his right to a court-appointed examiner. Respondent first made his request on the date of jury selection for the hearing. The court denied this request as

untimely and as a *de facto* motion for a continuance. The record reflects that respondent made no request during the several weeks after the filing of the petition or at a previous pretrial hearing. Respondent's request was also vague, in that he did not recommend who should conduct the examination or a timeline for the procedure; respondent only stated that he had contacted an unknown Chicago practitioner. The continuance of a matter in order to obtain an expert is a matter of trial court discretion, and there was no abuse here. See *In re Bert W.*, 313 Ill. App. 3d 788, 793, 730 N.E.2d 591, 596 (2000); *People v. Rodgers*, 288 Ill. App. 3d 167, 171, 680 N.E.2d 437, 440-41 (1997).

## B. The Instructions

Respondent argues that the jury instructions were faulty in several respects. First, respondent contends that the jury was improperly instructed that an involuntary admission was appropriate if, because of mental illness, respondent exhibited "threatening or disruptive behavior," despite the amendment of the Code to delete the reference to disruptive behavior, effective June 2, 2000 (Pub. Act 91—726 (2000 Ill. Laws 1043-44); see 405 ILCS 5/2—107.1(a)(4) (West 2000)). In addition, respondent contends that the court erroneously failed to instruct the jury on the meaning of "clear and convincing evidence." Respondent contends that the instructions were also erroneous for failing to have the jury decide whether the benefits of each particular recommended medication outweighed the harm of the medication.

■ Respondent declined to present opposing jury instructions. Thus, we find that respondent has waived his argument that the instructions failed to account for the amendment to the Code deleting the reference to disruptive behavior. See *Vojas v. K mart Corp.*, 312 Ill. App. 3d 544, 549, 727 N.E.2d 397, 401 (2000); *Aguinaga v. City of Chicago*, 243 Ill. App. 3d 552, 575, 611 N.E.2d 1296, 1313 (1993).

Nonetheless, we are compelled to address the other two issues because our position is divergent from cases in the Second District—*In re Timothy H.*, 301 Ill. App. 3d 1008, 704 N.E.2d 943 (1998); *In re Nancy M.*, 317 Ill. App. 3d 167, 739 N.E.2d 607 (2000); and *In re Frances K.*, 322 Ill. App. 3d 203, 749 N.E.2d 1082 (2001). Like the Second District found in *Timothy H.* and *Nancy M.*, we find that this case falls within the exception to the mootness doctrine. See *Timothy H.*, 301 Ill. App. 3d at 1012, 704 N.E.2d at 945; *Nancy M.*, 317 Ill. App. 3d at 172, 739 N.E.2d at 612.

### 1. *The Definition of Clear and Convincing Evidence*

In *Timothy H.*, the trial court authorized the involuntary administration of psychotropic medication pursuant to a jury verdict.

No instruction defining "clear and convincing evidence" was offered by either party, and no such instruction was given to the jury. The Second District found that the trial court had abused its discretion and that the respondent had been denied a fair trial because the court failed to offer, *sua sponte*, a definition of "clear and convincing evidence." The appellate court began its discussion by recognizing that in the history of the term "clear and convincing," the phrase has been given different definitions by different courts and that some courts have found the term best left undefined. *Timothy H.*, 301 Ill. App. 3d at 1014-15, 704 N.E.2d at 947; see *Lines v. Willey*, 253 Ill. 440, 449, 97 N.E. 843, 847 (1912); *Hotze v. Schlanser*, 410 Ill. 265, 269, 102 N.E.2d 131, 133 (1951); *Johnson v. Johnson*, 1 Ill. 2d 319, 324, 115 N.E.2d 617, 619 (1953); *In re Estate of Ragen*, 79 Ill. App. 3d 8, 14, 398 N.E.2d 198, 203 (1979); *In re Estate of Hutchins*, 120 Ill. App. 3d 1084, 1087, 458 N.E.2d 1356, 1358 (1984); *In re Estate of Casey*, 155 Ill. App. 3d 116, 123, 507 N.E.2d 962, 966 (1987); *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 820, 643 N.E.2d 199, 219 (1994); *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995). The court pointed out, however, that in response to a recent statutory amendment changing the burden of proof for a defendant wishing to present a defense of not guilty by reason of insanity, the Illinois Supreme Court Committee on Pattern Jury Instructions added a new instruction defining "clear and convincing evidence" (Illinois Pattern Jury Instructions, Criminal, No. 4.19 (3d ed. Supp. 1996) (hereinafter IPI Criminal 3d No. 4.19 (Supp. 1996))). *Timothy H.*, 301 Ill. App. 3d at 1015, 704 N.E.2d at 947-48.

The court found that, without being instructed on the definition of "clear and convincing," the jurors could conceivably apply the wrong standard, such as one they were familiar with from another trial for which they served as jurors. The court concluded that the respondent was denied a fair trial because the court failed to provide, *sua sponte*, the Illinois pattern instruction defining the applicable burden of proof. *Timothy H.*, 301 Ill. App. 3d at 1016, 704 N.E.2d at 948 (" '[I]t is essential that jurors receive a definition or description of the applicable burden of proof' "), quoting *Rikard v. Dover Elevator Co.*, 126 Ill. App. 3d 438, 441, 467 N.E.2d 386, 388 (1984).

We disagree with the holding in *Timothy H*. In contrast to the quotation from *Rikard* relied upon in *Timothy H.*, this court has not called for a definition of "clear and convincing" to be given. In *Rikard*, we held that a trial court should have informed the jury of the relevant burden of proof by issuing Illinois Pattern Jury Instructions, Civil, No. 21.01 (2d ed. 1971), which informs the jury that the phrase "burden of proof" means that a proposition must be shown to be more probably true than not true.

The development of a definition of "clear and convincing" for use in an insanity defense does not resolve the problems with defining the phrase. The possibility of confusion that occurs when a definition of "clear and convincing evidence" is given has led several courts to recommend not defining the phrase. See, *e.g.*, *Washington Courte Condominium Ass'n-Four*, 267 Ill. App. 3d at 820, 643 N.E.2d at 219; *In re Estate of Casey*, 155 Ill. App. 3d at 123, 507 N.E.2d at 966. Indeed, the committee recognized that defining "clear and convincing" is problematic—it recommended that no such instruction be given in actions for fraud and deceit. Illinois Pattern Jury Instructions, Civil, No. 800.03, Comment, at 739 (2000) (hereinafter IPI Civil (2000) No. 800.03). As the committee explained in its comment:

> "The expression 'clear and convincing' has sometimes been defined in terms of 'reasonable doubt.' However, such a definition seems to lack clarity and could easily be confused with criminal matters in the minds of a jury. Definitions are discussed in the case of *Parsons v. Winter*, 142 Ill. App. 3d 354, 491 N.E.2d 1236, 1240, 96 Ill. Dec. 776, 780 (1st Dist. 1986). That court, after discussing a definition of 'clear and convincing' which included the words 'reasonable doubt,' concluded that 'highly probably true' would be a clearer statement of the concept. The court also relied on *In re Estate of Ragen*, 79 Ill. App. 3d 8, 13-14, 398 N.E.2d 198, 202-03, 34 Ill. Dec. 523, 527-28 (1st Dist. 1979)." IPI Civil (2000) No. 800.03, Comment, at 739.

The committee considered both the term "reasonable doubt" and the term "highly probably true." The conclusion the committee reached is that the expression "clear and convincing" is more understandable than any definition that could be framed using "reasonable doubt" or "highly probably true." The expression "clear and convincing" includes terms that are readily understandable and in common, everyday usage, and an effort to define those terms might very well create confusion and misunderstanding. IPI Civil (2000) No. 800.03, Comment, at 739.

The issuance of IPI Criminal 3d No. 4.19 (Supp. 1996) did not eliminate the problems with defining "clear and convincing evidence." Instead, the instruction was developed for ·a situation where the jury is presented with contrasting burdens of proof. The instruction was specifically delineated as follows: "New Instruction To Reflect Statutory Amendment." IPI Criminal 3d No. 4.19, at 24 (Supp. 1996). The committee described how the definition addresses the specific problem in insanity-defense cases:

> "P.A. 89—404, effective August 20, 1995, changed the burden of proof on a defendant asserting the insanity defense from 'prepon-

derance of the evidence' to 'clear and convincing evidence.' (See 720 ILCS 5/6—2(e) (West 1994) (formerly Ill. Rev. Stat. ch. 38, § 6—2(e) (1991)).) Because the insanity defense frequently arises in first[-]degree murder cases and because juries in such cases often are instructed to consider the applicability of the second[-]degree murder statute (in which the defendant has the burden of proving the existence of a mitigating factor by a preponderance of the evidence), the Committee believes that an instruction defining 'clear and convincing evidence' must be used in such cases in order to provide guidance regarding the difference between 'clear and convincing evidence' and 'preponderance of the evidence' (as defined in Instruction 4.18).

Note that in Instructions 24—25.01E, 24—25.01F, 24—25.01G, and 24—25.01H, the jury receives issues instructions containing references to both 'clear and convincing evidence' and 'preponderance of the evidence.' " IPI Criminal 3d No. 4.19, Committee Note, at 24 (Supp. 1996).

■ Unlike the situation IPI Criminal 3d No. 4.19 (Supp. 1996) was developed to address, in this case there is no claim that the jury was given instructions containing the phrase "preponderance of the evidence" along with "clear and convincing." In the absence of a contrasting burden of proof, the committee's comment to IPI Civil (2000) No. 800.03 that "clear and convincing" is a readily understandable expression in common, everyday usage still applies (IPI Civil (2000) No. 800.03, Comment, at 739). Although the supreme court rules require that an Illinois pattern instruction be given on subjects that need to be addressed, the trial court is given discretion in determining when the jury should be instructed on a subject. 134 Ill. 2d R. 239(a). We cannot say that the failure of the court to give an instruction, *sua sponte*, defining "clear and convincing" was an abuse of discretion or denied respondent a fair trial.

## 2. *The Verdict Form*

Respondent also argues that he was denied a fair trial because the jury did not determine whether the benefits of each of the specified medications outweighed the harm or whether the testing and other procedures were necessary. Respondent contends that when a jury finds in favor of administering psychotropic medication, its verdict should specifically state that it intended to authorize the administration of specific medications and testing. Defendant relies on *In re Nancy M.*, 317 Ill. App. 3d 167, 178, 739 N.E.2d 607, 616 (2000), and *In re Frances K.*, 322 Ill. App. 3d 203, 207, 749 N.E.2d 1082, 1085 (2001).

In *Nancy M.*, the State presented evidence that the three proposed

medications were very different, and the respondent testified that she had a preference of medications. The court based the need for the jury to determine which specific medications were to be administered on the factors established by the Code. Under section 2—107.1(a)(4) of the Code, in addition to other factors, the State must prove by clear and convincing evidence that "the benefits of the treatment outweigh the harm." 405 ILCS 5/2—107.1(a)(4) (West 2000). In *Nancy M.*, the specific medications were at issue because the respondent testified that she preferred certain recommended medications over others. Therefore, the failure of the jury to address the specific medications left open what "treatment" it was recommending. The court stated that the verdict failed to show that the jury clearly intended to authorize the involuntary administration of all three medications. Because the verdict was ambiguous on the question of what constituted the "treatment," the jury failed to make a finding that the treatment outweighed the harm.

The court noted that the very nature of the conflicting testimony placed the three specific medications at issue and should have alerted counsel that this was a dispute for the jury to resolve. *Nancy M.*, 317 Ill. App. 3d at 177, 739 N.E.2d at 615. The failure of the court to issue its own verdict form *sua sponte* was held to be plain error. The court stated that, based on the testimony, the jury could have believed that the benefits of one medication outweighed the benefits of another but that it could have failed to address the issue in its verdict. The court ruled that the jury verdict must address each particular medication because the Code requires an order to be entered specifying the medications and anticipated range of dosages. *Nancy M.*, 317 Ill. App. 3d at 178, 739 N.E.2d at 616, relying on *In re Len P.*, 302 Ill. App. 3d 281, 285, 706 N.E.2d 104, 108 (1999), in turn citing 405 ILCS 5/2—107.1(a)(6) (West Supp. 1997).

The State concedes that when a respondent raises an issue regarding a particular drug, the jury should make an individual finding about that medication; however, the State contends that no such issue was raised. The State argues that this case could be factually distinguished from *Nancy M.* in that respondent did not state a preference among the medications that were proposed. In a decision published after the filing of the briefs in this matter, the Second District found this distinction meaningless. See *Frances K.*, 322 Ill. App. 3d 203, 749 N.E.2d 1082.

In *Frances K.*, the treating expert testified about the purpose, side effects, and benefits of each medication, but the respondent did not question the benefits or testify to a preference for any particular medication. In citing to *Nancy M.*, the court stated that the jury verdict

must address each specific medication and dosage. The court addressed the structure of the Code:

"As the dissent notes, the requirement of section 2—107.1(a)(6) of the Mental Health Code (405 ILCS 5/2—107.1(a)(6) (West 1998)) that the treatment order specify the medications and anticipated range of dosages was added by Public Act 90—538 (Pub. Act 90—538, eff. December 1, 1997). 322 Ill. App. 3d at 212. In our view, the legislature did not intend to remove consent from the physician-patient relationship by this addition to the statutory scheme. Instead, we believe the legislature created a procedure whereby substituted consent would be given by the appropriate tribunal, namely, the judge or the jury. As such, informed consent, as determined by the finder of fact, should weigh not only whether treatment should be given but also the manner in which the treatment should be administered. The finder of fact may decide, based on the evidence presented, that all, some, or none of the drugs the physician has considered should be administered to the patient. Without this safeguard, the ultimate determination of the manner in which treatment is prescribed is taken out of the hands of the trier of fact and, in our view, denies the respondent due process." *Frances K.*, 322 Ill. App. 3d at 210, 749 N.E.2d at 1087-88.

The trial court's order was reversed.

We find the dissent in *Frances K.* more persuasive. In his dissent, Justice Grometer argued that *Nancy M.* had incorrectly expanded the requirements of section 2—107.1(a)(4)(D) of the Code (405 ILCS 5/2—107.1(a)(4)(D) (West 1998)). The dissent contended that the Code required the State to prove only the seven factors outlined in section 2—107.1(a)(4). The dissent pointed out that the language in section 2—107.1(a)(4)(D) had been amended—from " 'That the benefits of the psychotropic medication will outweigh the harm' " to " 'That the benefits of the treatment outweigh the harm.' " *Frances K.*, 322 Ill. App. 3d at 212, 749 N.E.2d at 1089 (Grometer, J., dissenting), quoting 405 ILCS 5/2—107.1(a)(4)(D) (West 1996), and quoting 405 ILCS 5/2—107.1(a)(4)(D) (West 1998). The dissent pointed out that if the legislature had intended for the fact finder to address, in the verdict, the need for each specific medication, the legislature could have made that amendment.

The dissent also pointed out that unless a case or statute requires otherwise, a jury should render a general verdict. The dissent argued, and we agree, that there is nothing in section 2—107.1(a)(4) that requires a specialized verdict addressing each particular medication, as set forth in *Nancy M.* Indeed, as we read section 2—107.1(a)(4), there is no requirement that there be a specialized verdict addressing the seven factors set forth in the section, as long as the jury is properly instructed on the issues.

■ The dissent correctly stated that section 2—107.1(a)(6), which requires the medications and range of dosages to be specified, pertains to the trial court *order* and not the factual determinations that are a prerequisite to treatment. According to the plain language of the Code, an order specifying the medications and who should administer them is to be made after the fact finder makes a determination that the factors outlined in section 2—107.1(a)(4) have been proven by clear and convincing evidence. As the dissent stated:

"Section 2—107.1(a)(6) does not require the State to prove by clear and convincing evidence which medications are to be administered or their respective dosages any more than the statute requires the State to prove by clear and convincing evidence who shall administer these medications or when they need not be given." *Frances K.*, 322 Ill. App. 3d at 213, 749 N.E.2d at 1089 (Grometer, J., dissenting).

We agree with the dissent in *Frances K.* In the case at hand, respondent received a fair trial according to the requirements established by the Code. The State petitioned for the medications and testing that were in the court's order, and the only evidence regarding treatment was from the State's expert, who testified about the use of these medications. When objecting to treatment, respondent did not differentiate among medications. Although, like in *Nancy M.*, the State recommended the use of alternative medications, the plan of "treatment" was clearly outlined and set before the jury.

The jury was instructed on the factors that needed to be proved before involuntary treatment could be administered. See 405 ILCS 5/2—107.1(a)(4) (West 2000). Specifically, the jury was instructed that it must find that the benefits of the treatment outweighed the harm. The jury rendered a verdict after being properly instructed on the factors outlined in the Code.

Pursuant to the Code, the court entered a subsequent order specifying the medications and the anticipated range of dosages. See 405 ILCS 5/2—107.1(a)(6) (West 2000). The trial court had all of the relevant information, and the plan of treatment was not vague. *Cf. Len P.*, 302 Ill. App. 3d at 285, 706 N.E.2d at 108 (medication plan was vague). There is no question that the order was consistent with the evidence presented at the hearing and the verdict of the jury. There was no error by the court.

## III. CONCLUSION

Accordingly, the judgment of the circuit court is hereby affirmed.

Affirmed.

WELCH and KUEHN, JJ., concur.