NOTICE
Decision filed 09/01/16. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2016 IL App (5th) 130416-B

NO. 5-13-0416

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Johnson County. |
| | ) | |
| v. | ) | No. 99-CF-106 |
| | ) | |
| JAMES E. GRANT, | ) | Honorable |
| | ) | James R. Williamson, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Welch and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1     In 2002, the respondent, James E. Grant, was committed pursuant to the Sexually Dangerous Persons Act (SDP Act) (725 ILCS 205/0.01 *et seq*. (West 2000)).  In July 2012, he filed the application for discharge that is at issue in this appeal.  A jury found that the respondent remained a sexually dangerous person, and the trial court entered an order to that effect.  The respondent appealed, raising four issues.  We reversed the court's order on the basis of one of those issues−we found that the court erred and violated the respondent's right to due process by appointing an independent examiner of the State's choosing.  *People v. Grant*, 2015 IL App (5th) 130416.  Because we remanded

1

the matter to the trial court for a new hearing, we did not find it necessary to address the respondent's remaining arguments. The State appealed, and the Illinois Supreme Court affirmed our decision. *People v. Grant*, 2016 IL 119162. In addition, however, the supreme court directed this court to consider any additional issues that we find are likely to occur on remand.

¶ 2 The respondent argues that (1) the trial court abused its discretion in denying his motion *in limine* seeking to exclude testimony of four witnesses concerning the details of the respondent's underlying convictions and an uncharged incident that was considered by the expert witnesses in reaching their opinions, (2) the court committed plain error in failing to provide jurors with a definition of clear and convincing evidence *sua sponte*, and (3) the court erred in refusing several of his proposed jury instructions which would have given the jury definitions of various terms that are not defined under the SDP Act. We find that the court abused its discretion in denying the motion *in limine* in its entirety. However, we find no merit to either of his contentions related to jury instructions. We remand this matter to the trial court for further proceedings consistent with both this decision and our earlier decision in this matter.

¶ 3                                    Factual Background

¶ 4 The 1999 criminal charges underlying the respondent's commitment stem from four separate incidents. He was charged with residential burglary, theft, and criminal damage to property in three of those incidents, each of which involved the theft of women's underwear. In the fourth incident, the respondent was charged with attempted aggravated criminal sexual assault, home invasion, residential burglary, and aggravated

2

battery. These charges involved the attempted sexual assault of an adult neighbor, Heather Pearman. In the Pearman case, the respondent pled guilty to the charge of home invasion and was sentenced to 20 years in prison. In two of the other cases, the respondent pled guilty to residential burglary and was sentenced to nine years on each charge. In the remaining burglary case, the prosecution opted to file a petition for commitment under the SDP Act in lieu of prosecution. As noted, the respondent was committed pursuant to the SDP Act in 2002.

¶ 5    In 2012, the respondent filed the recovery application at issue in this appeal, his third such application. A team of three evaluators found that the respondent was at low risk for reoffending. They recommended that he be conditionally released. The State filed a motion asking the court to appoint Dr. Angeline Stanislaus as an independent examiner to conduct an additional evaluation of the respondent. The court granted the State's motion and appointed Dr. Stanislaus. Dr. Stanislaus diagnosed the respondent with transvestite fetishism, paraphilia, and "rule out" pedophilia, which means she did not have enough information to diagnose the respondent with pedophilia but could not rule it out. She opined that the respondent had a propensity to commit sex offenses as a result of his fetishism. She acknowledged, however, that this conclusion had to do with the way he fulfilled his urges to dress in women's underwear, not simply the fact that he had those urges. Dr. Stanislaus and the three evaluators all testified at a hearing on the respondent's recovery application. As noted earlier, the respondent appealed an order finding that he remained sexually dangerous, this court reversed on the basis of the court's appointment of Dr. Stanislaus, and the Supreme Court of Illinois affirmed our

3

decision. We now consider the respondent's remaining arguments. We will discuss additional background facts as necessary.

¶ 6                                    The SDP Act

¶ 7    The SDP Act allows the State to file a petition for the commitment of a criminal defendant instead of prosecution if prosecutors believe the defendant is a sexually dangerous person as defined in the SDP Act. *People v. Burns*, 209 Ill. 2d 551, 553 (2004). A sexually dangerous person is defined as an individual who (1) has suffered for at least one year from a mental disorder that includes the propensity to commit sex offenses and (2) has demonstrated a propensity to commit sexual assault or to commit molestation against children. 725 ILCS 205/1.01 (West 2012). At proceedings on a petition to commit a respondent, the State must prove he is sexually dangerous beyond a reasonable doubt. 725 ILCS 205/3.01 (West 2012).

¶ 8    At any time after a respondent is committed under the SDP Act, he may file a recovery application, alleging that he is no longer sexually dangerous and requesting a discharge or conditional release. *People v. Trainor*, 196 Ill. 2d 318, 331 (2001). At proceedings on a recovery application, the State must prove that the respondent remains sexually dangerous and subject to continued commitment by clear and convincing evidence. 725 ILCS 205/9(b) (West 2012). At issue in a recovery proceeding is the respondent's *current* psychological condition and whether he "is presently a sexually dangerous person within the meaning of the Act." *People v. Studdard*, 82 Ill. App. 3d 736, 740 (1980). The respondent's primary argument in this appeal is that the court allowed the State to present evidence that related to his mental condition between 1997

4

and 1999 rather than his mental condition at the time of the hearing.  We turn now to those arguments.

¶ 9                                Respondent's Motion *in Limine*

¶ 10    The respondent first argues that the court abused its discretion in denying his second motion *in limine*.  We review a trial court's decision to grant or deny a motion *in limine* to determine whether the court abused its discretion.  *People v. Melton*, 2013 IL App (1st) 060039, ¶ 58.  We agree with the respondent that the court abused its discretion in denying the motion in its entirety.  However, as we will explain, under the unusual circumstances of this case, we find that some of the testimony he sought to exclude is properly admissible.

¶ 11    Shortly before trial, the respondent filed his second motion *in limine*.  He sought to exclude the anticipated trial testimony of four witnesses.  Specifically, he sought to exclude the testimony of Heather Pearman about the events underlying his guilty plea in the home invasion case.  He also sought to exclude the testimony of Sonny Warren concerning a 1997 incident at Buncombe Elementary School.  Warren was 13 years old when the incident occurred.  Her anticipated testimony would describe discovering the respondent in the girls' locker room at Buncombe Elementary School.  The incident did not lead to any charges against the respondent.  The respondent also sought to exclude the testimony of Johnson County Sheriff Elry Faulkner and Deputy Jeff Jordan concerning their investigation of the incident at Buncombe Elementary School and all four of the criminal cases.  Finally, the respondent asked the court to exclude a video recording of his confession to police.  He argued that none of this evidence was relevant because it did

5

not relate to his current condition. He further argued that Pearman's anticipated testimony was especially prejudicial and would amount to a retrial on the felony charges. In addition, he argued that Warren's testimony was inadmissible because it related to an incident that did not involve any criminal conviction. The court denied the motion.

¶ 12   At the recovery hearing, the following testimony was elicited over the respondent's objection. Heather Pearman testified that at 5:45 a.m. on October 13, 1999, she awoke to find someone sitting on her bed. She assumed that it was her husband, who left for work at 5:30. Pearman testified that she asked twice, "What are you doing?" but received no answer. At this point, she reached up to touch the person's face and felt a telephone cord. Pearman believed the intruder was trying to choke her, so she "started panicking and screaming." She testified that she grabbed hold of the intruder to try to "hold him off of" her. She explained that a friend of her husband was spending the night at the Pearman home. The friend ran into the Pearmans' bedroom when he heard her screams, and the intruder then fled. Pearman testified that she jumped on the intruder's back to attempt to stop him from fleeing. A scuffle ensued involving Pearman, her husband's friend, and the intruder; however, the intruder was able to get away and flee from the house. Pearman testified that she then ran to get her gun and attempted to shoot the intruder, but her gun did not fire.

¶ 13   Pearman acknowledged that it was too dark for her to see the intruder. She testified, however, that she believed that it was the respondent because he had a "tall and lanky" build and because when he fled from her home, he ran in the direction of the respondent's house. She explained that she knew the respondent because he was her

6

neighbor.  When asked whether she would have any reason to dispute it if she were told that the respondent's intent that night was to sexually assault her, Pearman responded, "No."

¶ 14    Pearman acknowledged that she did not have any contact with the respondent after the incident and had no personal knowledge concerning his treatment or progress.  She noted, however, that she heard he had been deemed not to be dangerous.  Over the respondent's objection, the State's Attorney asked Pearman if she agreed that the respondent was no longer dangerous.  She replied, "No."  Asked to explain, she stated, "I really feel like a lot of people don't get rehabilitated very well or don't−I think he's ill." The State's Attorney then asked Pearman whether she was afraid of the respondent when the events took place.  She replied, "Very."  Asked if she was still afraid, she again replied, "Very."  Finally, Pearman was asked if she would be afraid if the respondent was released, and again she replied, "Very."

¶ 15    Sonny Warren testified that she had known the respondent since she was a child. She testified that when she was in eighth grade, she and a friend went to the basement of Buncombe Elementary School to use the restroom, which was located next to the girls' locker room.  She testified that they heard some second-grade girls playing hide and seek in the locker room.  They went into the locker room to tell the younger girls to go back to class.  Warren stated that when they entered the locker room, the lights were turned off. Warren reached for the light switch, but felt a hand covering the switch. She testified that she knew that it was the respondent's hand because she could see his eyes.  Warren told her friend to go to get help, and she told the younger girls to get out of the locker room.

7

Asked why she sent her friend for help, Warren explained, "He didn't need to be in there, you know, he was the man around town that you didn't want to be around." She testified further that the respondent ran from the locker room, toward an exit, and out of the school building. She stated that when she saw him running toward the exit, where it was light, she recognized him.

¶ 16 Warren testified that she immediately reported the incident to school authorities and that she reported it to police the next day. She explained that she discussed the incident with a teacher because it upset her. She testified that she was afraid during the incident. Warren acknowledged that the second-grade girls playing in the locker room were all fully clothed, and she acknowledged that she did not see the respondent touch any of them or attempt to do so.

¶ 17 Sheriff Elry Faulkner testified that he became involved in the investigation of the attempted sexual assault of Heather Pearman because he knew the respondent and his family. He explained that Deputy Jeff Jordan had obtained a search warrant requiring the respondent to provide hair and saliva samples for DNA analysis and that Deputy Jordan asked Sheriff Faulkner to go with him to execute that warrant. (The samples were needed for comparison with hair found on a ski mask that was found in Heather Pearman's bedroom.) Sheriff Faulkner testified that while they were driving the respondent to the hospital to obtain the samples, the respondent confessed. After obtaining the samples, they drove the respondent to the police station to take a statement from him. A video recording of the respondent's statement was played for the jury. Among other things, the respondent told the officers that he put on a condom before going to Heather Pearman's

8

home.  After playing the video, the State's Attorney asked Sheriff Faulkner, "I want to be very clear, um, Mr. Grant said he put on a condom before he left his home and went to the Pearman home, is that correct?"  Sheriff Faulkner replied, "That's correct."

¶ 18   Deputy Jordan was one of two deputies who responded to a call from Heather Pearman.  He testified that he found a ski mask and electrical cord at the scene.  He identified the cord, and the State's Attorney was allowed to publish it to the jury.  Deputy Jordan testified that he spoke with the respondent later that morning.  Although he did not tell the respondent that he was a suspect, he did indicate that he would likely be contacting him to collect hair and saliva samples for DNA testing.  Deputy Jordan testified that he saw the respondent five days later with his hair cut very short.  He explained that this seemed suspicious because prior to that, the respondent always had shoulder-length hair.  Deputy Jordan further testified that a search of the respondent's home uncovered a pornographic movie, additional cords, and several items of women's underwear and lingerie, including a black negligee that was reported missing from another home.  He testified that when he and Sheriff Faulkner interviewed the respondent, the respondent admitted that he went to the Heather Pearman's home because he intended to have sex with her.

¶ 19   We will first consider the respondent's arguments concerning the admissibility of Sonny Warren's testimony.  He argues that her testimony was not relevant to any issue because there was nothing inherently sexual about the incident.  In addition, he argues that the testimony was not admissible because the incident did not lead to a conviction for any crime.  We agree.

9

¶ 20    In support of his position, the respondent cites *People v. Beshears*, 65 Ill. App. 2d 446 (1965).  There, the trial court admitted the testimony of a police officer describing his arrest of the respondent for child molestation and the events leading up to the respondent's arrest.  *Id*. at 449-50.  However, there was no evidence in the record showing that Beshears was ever convicted of a crime.  *Id*. at 450.  On appeal, this court reversed an order finding the respondent to be a sexually dangerous person.  We explained that evidence of an arrest without a conviction was not admissible to prove the commission of a crime.  *Id*. at 461.  The incident described by Sonny Warren in this case did not lead to an arrest, much less a conviction.  In addition, while it is certainly plausible that the respondent went into the girls' locker room with the intention of molesting a young child, nothing in Sonny's testimony or other evidence establishes that he actually did so or attempted to do so.  As such, the trial court abused its discretion in allowing her to testify.

¶ 21    We note, however, that some of the expert witnesses referred to the Buncombe Elementary School incident in their testimony.  We further note that the court gave jurors a limiting instruction, explaining to them that they could consider this evidence only for the purpose of determining how much weight to give the experts' opinions.  An expert witness may testify about the underlying facts contained in any reports or other materials the expert reasonably relied on in forming his or her opinion even if direct evidence of those facts is not admissible.  *In re Commitment of Butler*, 2013 IL App (1st) 113606, ¶ 31 (citing *People v. Anderson*, 113 Ill. 2d 1, 9 (1986)); *In re Commitment of Hooker*, 2012 IL App (2d) 101007, ¶ 51.  Such evidence is admissible for the limited purpose of

explaining to jurors the basis of the expert's opinion; however, it may not be admitted as substantive evidence. *In re Commitment of Butler*, 2013 IL App (1st) 113606, ¶ 31. In addition, such evidence may be excluded if the trial judge determines that its prejudicial impact outweighs its probative value. *People v. P.T.*, 233 Ill. App. 3d 386, 392 (1992) (quoting *Anderson*, 113 Ill. 2d at 12). We express no view on the appropriateness of admitting the experts' testimony concerning the Buncombe Elementary School incident in this case.

¶ 22 We next consider the remainder of the respondent's arguments related to the motion *in limine*. He acknowledges that evidence of his four convictions is admissible. The evidence is relevant because the State is required to prove that a respondent in SDP proceedings has a propensity to commit sex crimes and that he suffers from a mental disorder that has lasted for more than one year. *Id.* at 393; *People v. Studdard*, 82 Ill. App. 3d 736, 741 (1980) (citing Ill. Rev. Stat. 1977, ch. 38, ¶ 105-1.01 (now 725 ILCS 205/1.01 (West 2014))). Moreover, the State must prove that the respondent has *demonstrated* a propensity to commit sex crimes, which requires it to prove that the respondent has committed or attempted to commit at least one sexual assault or act of molestation of a child. *People v. Allen*, 107 Ill. 2d 91, 105 (1985). The respondent argues, however, that the evidence presented in this case was cumulative and highly prejudicial. He argues further that the evidence of his crimes should have been limited to certified copies of his convictions, a presentence investigation report that was admitted into evidence, and any references to those crimes in the evaluations and reports of the expert witnesses who evaluated him.

¶ 23    We agree with the respondent that ordinarily evidence of prior sex crimes should be limited to certified copies of convictions for those crimes. See *People v. Lawton*, 212 Ill. 2d 285, 303 (2004) (explaining that "[t]he State may [show the respondent's propensity to commit sex crimes] by introducing a record of a prior conviction"); *People v. Cole*, 299 Ill. App. 3d 229, 234 (1998) (holding that court records demonstrated that the respondent had committed previous sex offenses); *Studdard*, 82 Ill. App. 3d at 741 (suggesting in *dicta* that on remand the State should offer a certified copy of a conviction to prove a previous sex offense). In this case, however, it would not be clear from the certified copies of the respondent's convictions alone that the convictions were for sex crimes. This is because the respondent pled guilty to home invasion and residential burglary, which are not sex offenses. As such, *some* testimony from the sheriff or the deputy who investigated the crimes is necessary for the State to prove that the respondent has a demonstrated propensity to commit sex crimes. We are aware of no cases explicitly prohibiting such testimony in all SDP Act cases.

¶ 24    We hold, however, that such testimony must be limited to a basic recitation of the facts underlying those convictions. For the State to prove that the respondent has demonstrated a propensity to commit sex crimes, it is necessary to present at least some testimony explaining that he committed the home invasion with the intent to sexually assault Heather Pearman. It is also relevant for the State to present at least some testimony explaining the sexual nature of the residential burglary convictions. However, it was not necessary for the jury to hear these facts repeatedly. It was prejudicial and irrelevant for the jury to hear that police found multiple cords in the respondent's house,

12

except to the extent the expert witnesses relied on this information. It was prejudicial and irrelevant for the jury to hear that the respondent aroused Deputy Jordan's suspicion by cutting his hair short after being informed that he would likely be required to provide a hair sample for DNA testing.

¶ 25 Furthermore, we find that Heather Pearman's testimony was not relevant and was especially prejudicial. Her testimony was irrelevant because she did not have any personal knowledge of the respondent's intent. She testified that she believed the intruder was attempting to choke her, and she later testified that she would have no reason to dispute it if she was told that his intent was to sexually assault her. In spite of this, Pearman's testimony was particularly prejudicial to the respondent. As the respondent notes, the testimony of a victim describing what it was like to experience a violent crime is uniquely prejudicial. In addition, Pearman testified multiple times that she was afraid during and after the attack. Considering the limited probative value of this testimony, its potential to have a prejudicial impact is unacceptably high.

¶ 26 In conclusion, we find that the trial court abused its discretion in denying the respondent's motion *in limine* in its entirety. On remand, the court should exclude the testimony of Sonny Warren and Heather Pearman and the video recording of the respondent's confession. In addition, the court should limit the testimony of Sheriff Faulkner and Deputy Jordan to the facts of the underlying offenses. We note that some of these matters were considered by the experts in evaluating the respondent. As discussed previously, the experts may testify about facts they relied on in reaching their

13

diagnoses, even if those facts are not themselves admitted into evidence. However, they may not be admitted as substantive evidence, as happened here.

¶ 27                                    Jury Instructions

¶ 28    The respondent raises two arguments concerning jury instructions. He first argues that the court committed plain error by failing, *sua sponte*, to provide an instruction defining clear and convincing evidence for jurors. In addition, he argues that the court abused its discretion in refusing to give his tendered nonpattern jury instructions. We find neither argument persuasive.

¶ 29    Jury instructions serve an important purpose−they help jurors understand the law applicable to the evidence before them so that they are able to reach the correct verdict. *People v. Bowman*, 357 Ill. App. 3d 290, 294 (2005). Parties are entitled to have the jury instructed on the law applicable to the issues presented. *Johnson v. Johnson*, 386 Ill. App. 3d 522, 542 (2008). Determining which instructions should be given is a matter within the discretion of the trial court. The court abuses its discretion only where its instructions are unclear or misleading, or where they "do not fairly and accurately state the law." *Id.*

¶ 30    The respondent first argues that the court's failure to provide jurors with a definition of clear and convincing evidence constituted plain error. We note that because we have already reversed the court's judgment on another basis and are addressing this issue only to provide guidance should it arise on remand, we need not determine whether the asserted error rises to the level of plain error. For the reasons that follow, we find that

14

the court is not required to provide jurors with a definition of clear and convincing evidence even if requested to do so.

¶ 31    Ordinarily, if a party wants a specific jury instruction given, the party must request that instruction. *People v. Turner*, 128 Ill. 2d 540, 562 (1989). As the respondent correctly contends, however, in the criminal context, trial courts are required to give certain jury instructions *sua sponte* in order to ensure the defendant's right to a fair trial. *Id*. at 562-63. Specifically, courts must provide instructions concerning the presumption of innocence, the elements of the offense charged, and, most significantly for our purposes, the burden of proof. *Id*. Although proceedings under the SDP Act are civil in nature, respondents have many of the rights associated with a criminal trial because of the potential deprivation of liberty that is at stake. *Trainor*, 196 Ill. 2d at 328. Thus, we agree with the respondent that properly instructing the jury on the standard of proof is crucial.

¶ 32    Here, however, it is important to emphasize that the jury *was* properly instructed that the State was required to prove its case by clear and convincing evidence. This court has previously held that trial courts are not required to define that standard. *In re R.W*., 332 Ill. App. 3d 901, 906 (2002). *In re R.W*. involved a petition for the involuntary administration of psychotropic medication. *Id*. at 902. However, the reasoning underlying our decision there is applicable here. We explained there that "[t]he possibility of confusion that occurs when a definition of 'clear and convincing evidence' is given has led several [Illinois] courts to recommend not defining the phrase." *Id*. at 907 (citing *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp*., 267

15

Ill. App. 3d 790, 820 (1994), and *In re Estate of Casey*, 155 Ill. App. 3d 116, 123 (1987)). We also considered the committee comments to an Illinois pattern jury instruction used in civil cases involving fraud and deceit, which require proof by clear and convincing evidence. We noted that the committee concluded "that the expression 'clear and convincing' is more understandable" than any other definition that might be given. *Id.* (citing Illinois Pattern Jury Instructions, Civil, No. 800.03, Comment, at 739 (2000)).

¶ 33    We acknowledged that there is a pattern instruction defining "clear and convincing evidence" to be used in criminal cases involving the defense of not guilty by reason of insanity. *Id.* (citing Illinois Pattern Jury Instructions, Criminal, No. 4.19 (3d ed. Supp. 1996)). We explained, however, that this instruction was necessary because such cases usually require juries to apply different standards of proof to various findings in the same trial. See *id.* at 907-08. We concluded that failure to give the jury an instruction defining clear and convincing evidence did not deprive the respondent of the right to a fair trial. *Id.* at 908.

¶ 34    The respondent urges us to reconsider our holding in light of the Second District's decision in *In re Timothy H.*, 301 Ill. App. 3d 1008 (1998), which reached the opposite conclusion. We decline to do so. We discussed *In re Timothy H.* and explicitly stated that we disagreed with its holding. *In re R.W.*, 332 Ill. App. 3d at 906. We still believe the rationale underlying our holding is sound. A court does not abuse its discretion or deprive the respondent of a fair trial if it instructs jurors that the State must prove its case by clear and convincing evidence without defining that term.

¶ 35    The respondent's final contention is that the court abused its discretion in refusing to give seven tendered nonpattern jury instructions that would have defined various terms that do not have definitions under the SDP Act.  We disagree.

¶ 36    As stated previously, a court abuses its discretion in deciding which instructions to give only if its instructions are confusing or misleading or do not accurately reflect the applicable law.  *Johnson*, 386 Ill. App. 3d at 542.  Once the court determines the issues on which jurors will be instructed, it must give the Illinois pattern jury instructions applicable to those issues unless the court determines that any of those instructions do not accurately reflect the law.  *Bowman*, 357 Ill. App. 3d at 294.  However, if there is no applicable pattern instruction, the court has the discretion to give a nonpattern instruction. We will not reverse its decision absent an abuse of that discretion.  *Id*.

¶ 37    We find no abuse of discretion.  As previously mentioned, the respondent's tendered instructions would have defined various terms that are not defined in the SDP Act.  Terms that are not defined by statute are to be given their ordinary and commonly understood meanings.  *People v. Hill*, 409 Ill. App. 3d 451, 454 (2011).  We believe that jurors should be able to understand the ordinary and commonly understood meanings of the terms used in the instructions provided.

¶ 38    The respondent argues, however, that jurors needed to be instructed on the definition of a sex offense due to conflicting testimony from the expert witnesses about what constitutes a sex offense.  This confusion stemmed from their consideration of the respondent's theft of underwear from homes.  We are not persuaded.  Assuming an additional nonpattern instruction may have been helpful, the instruction tendered by the

17

respondent would have been more likely to confuse jurors than to aid them. The instruction was over one page long and included references and citations to several statutes. The court did not abuse its discretion in refusing to give the instruction.

¶ 39    We have previously reversed the judgment of the trial court based on its decision to grant the State's motion for an independent evaluation. We now remand this matter to the trial court for further proceedings consistent with both this opinion and our earlier opinion in this matter.

¶ 40    Cause remanded.

2016 IL App (5th) 130416-B

NO. 5-13-0416

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Petitioner-Appellee, | ) ) | Johnson County. |
| v. | ) ) | No. 99-CF-106 |
| JAMES E. GRANT, | ) ) ) | Honorable James R. Williamson, |
| Respondent-Appellant. | ) | Judge, presiding. |

**Opinion Filed:** September 1, 2016

**Justices:** Honorable Melissa A. Chapman, J.

Honorable Thomas M. Welch, J., and
Honorable Judy L. Cates, J.,
Concur

**Attorney for Appellant**

Cord Z. Wittig, Kruger, Henry & Hunter, 110 West 5th Street, P.O. Box 568, Metropolis, IL 62960

**Attorneys for Appellee**

Hon. Tambra K. Cain, State's Attorney, Johnson County Courthouse, 401 Court Street, Vienna, IL 62995, Patrick Delfino, Director, David J. Robinson, Deputy Director, Perry Miller, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 725 South Second Street, Springfield, IL 62704